ESSEX COUNTY BOARD OF TAXATION, PLAINTIFF-RESPONDENT, v. CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, KENNETH A. GIBSON, MAYOR OF NEWARK, EARL HARRIS, MICHAEL BOTTONE, ANTHONY GUILIANO, MARIE VILLANI, JAMES ALLEN, ANTHONY CARRINO, SHARPE JAMES, HENRY MARTINEZ, DONALD TUCKER, INDIVIDUALLY AND AS MEMBERS OF THE MUNICIPAL COUNCIL OF NEWARK, JOHN GREXA, FINANCE DIRECTOR OF NEWARK, FRANK D'ASCENSIO, CITY CLERK OF NEWARK, AND JOSEPH FRISINA, TAX ASSESSOR OF NEWARK, DEFENDANTS-APPELLANTS.

Argued June 21, 1976—Decided March 31, 1977.

See also, 139 *N. J. Super.* 264.

*Mr. Milton A. Buck* argued the cause for appellants City of Newark, Kenneth A. Gibson, Earl Harris, Michael Bottone, Anthony Guiliano, Marie Villani, James Allen, Anthony Carrino, Sharpe James, John Grexa, Frank D'Ascensio and Joseph Frisina (*Mr. Melvin Simon* on the brief).

*Mr. Robert T. Pickett* argued the cause for appellant Donald Tucker (*Messrs. Pickett & Jennings,* attorneys; *Mr. Pickett* and *Mr. Reginald A. Jennings,* on the brief).

*Mr. Edward G. D'Alessandro* argued the cause for appellant Henry Martinez (*Messrs. Friedman & D'Alessandro,* attorneys; *Mr. D'Alessandro* and *Mr. Paul J. Hirsh* on the brief).

*Mr. Harry Haushalter,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

PER CURIAM. This is an appeal by the City of Newark, its mayor, the members of its council and certain of its fiscal officers from an order and judgment of the Superior Court, Law Division, for the civil commitment of five of the councilmen in aid of litigants' rights pursuant to *R.* 1:10–5. The determination was based upon the refusal of the named councilmen to comply with an order of the court dated April 1, 1976 directing the city and its appropriate officials to take the necessary steps to enter into a contract for the revaluation of all assessed property in the city as previously ordered by the Essex County Board of Taxation. The appeal is before the court on its order for direct certification prior to being heard in the Appellate Division. *R.* 2:12–2.

The background of this litigation is set forth in *Essex Cty. Bd. of Taxation v. Newark,* 139 *N. J. Super* 264 (App. Div. 1976), and need not be detailed here except for the following brief summary. Pursuant to its statutory duty

to secure the taxation of all property at its taxable value, the plaintiff (Board) has been attempting since March 1972 to prevail upon the city to undertake a professional revaluation of all its assessed realty. Such periodic revaluations are an absolute essential, particularly in times of continuous fluctuation of realty values, to accomplish the constitutional and statutory imperative of uniform and non-discriminatory taxation. *Tri-Terminal Corp. v. Bor. of Edgewater,* 68 *N. J.* 405, 410–411 (1975), *cert.* den. 425 *U. S.* 958, 96 *S. Ct.* 1739, 48 *L. Ed.* 2d 203 (1976); *Tp. of Willingboro v. Burlington Cty. Bd. Tax.,* 62 *N. J.* 203, 208–209 (1973); *Switz v. Middletown Twp.,* 23 *N. J.* 580 (1957); *Bergen Cty. Bd. of Tax. v. Bor. of Bogota,* 114 *N. J. Super.* 140 (App. Div. 1971). Newark has not had a revaluation since 1961. Despite prior orders of the Law Division to comply with directions of the Board for the effectuation of a revaluation, it has proved impossible to induce a majority of the city council to adopt a resolution authorizing the work and appropriating funds therefor.

In January 1975 Judge Margolis entered an order in the Law Division authorizing the Board to contract with a revaluation firm for the work at the sole expense of the city. In March 1975, no appropriation for the purpose having been made by the city, the court authorized the Board to receive from the State Treasurer, to the extent necessary to finance the revaluation and related work, the city's share of replacement revenues to be distributed to municipalities pursuant to *N. J. S. A.* 54:11D–1 *et seq.* These distributions are in lieu of the former tax proceeds of locally assessed tangible personal property used in business. Local assessment of such property was supplanted in 1966 by legislation calling for taxation by the State on business and business assets and distribution of a portion thereof to municipalities for their general purposes. That order was appealed by the city, and the Appellate Division, in the opinion cited above, reversed the order as improper in the absence of an appropriation by the city for the use of the funds in the manner specified. 139

*N. J. Super.* at 273–274. The court suggested that there were two other appropriate methods of enforcing the city's obligation to effect a revaluation: (a) contempt proceedings against the recalcitrant councilmen, *id.* at 270–271; and (b) proceedings to commit the councilmen in aid of litigant's rights under *R.* 1:10–5, *id.* at 271. In relation to the latter, *cf. Van Riper v. Board of Chosen Freeholders,* 137 *N. J. L.* 714, 716 (E. & A. 1948); *Boon Bros. v. Noonberg,* 9 *N. J. Misc.* 138, 153 *A.* 98 (Sup. Ct. 1931).

The Board made no effort to seek a review of the decision of the Appellate Division, but it adopted the suggestion of the court and successfully applied to Judge Margolis for an order of commitment of the councilmen after the council failed again, on the judge's order to do so, to muster a majority vote for effectuation of the revaluation program.

In granting certification herein, we stayed the order of commitment and invited argument by the parties on the appropriateness of a declaratory judgment by this court (a) declaring the validity of the remedy ordered by the Law Division in March 1975 or (b) adjudging that the expense of a revaluation to be ordered by the Board constitute an obligation of the city equivalent to a judgment against it such that enforcement thereof might be had in the manner provided by *N. J. S. A.* 2A:17–72 and *N. J. S. A.* 54:4–43 and 44.[1]

■ All parties now before us agree that it is preferable that the court adjudicate a means of executing the revaluation and providing for its payment without insisting upon incarceration of the councilmen as the sole means of achieving that result. While we do not condone the refusal of the

[1] After oral argument in this matter the Legislature, on July 28, 1976, adopted an act temporarily prohibiting contracts for revaluation of real property in cities of the first class with a population over 300,000. *L.* 1976, *c.* 58. This act by its terms expired six months after its adoption, on January 28, 1977.

defendant councilmen to comply with the law mandating periodic valuations, we are in agreement with the Attorney General that the public interest in this matter urgently dictates resort to any valid recourse which will expeditiously accomplish the revaluation so long overdue and so essential to the proper assessment for taxation of all taxable property in the city. It is obvious that protraction of a contest of wills between the councilmen and the court is not the best way to achieve the desired result. Upon careful consideration of the matter, we are satisfied that the remedy invoked by Judge Margolis in March 1975 is legally correct and capable of achieving the desired objective.

In effect, the trial court in 1975 ordered a diversion to the Board, for financing of the revaluation, of tax revenues distributable by the State Treasurer to the city for its general purposes under *N. J. S. A.* 54:11D–1 *et seq.* The Appellate Division thought that the statutory prohibition of expenditure by municipalities of unappropriated funds stood in the way of that recourse. *N. J. S. A.* 40A:4–1 *et seq.; N. J. S. A.* 40A:4–57. 139 *N. J. Super.* at 274–275. We think otherwise.

The purpose of the statutes cited above in requiring appropriations in advance of expenditures is to foster sound municipal management of finances by prohibiting undisclosed or irresponsible expenditures. *Manning Engineering Inc. v. Hudson Cty. Park Comm'n.,* 71 *N. J.* 145, 155 (1976). That policy is not subverted by the action here proposed. This is not a case of a municipality undertaking an expenditure not undergirded by an appropriation but rather a municipality refusing to make an expenditure which the law renders mandatory. Moreover, our judicial review of this matter, resulting in the steps we now take to compel compliance with a legislative mandate, affords at least that amount of protection customarily supplied by adherence to the appropriation procedures.

The consistency of the action we here direct with the legislative intent is further evidenced by the statute specifically authorizing municipalities to adopt an ordinance for a spe-

cial emergency appropriation for the purpose of preparing and executing a complete program of revaluation. *N. J. S. A.* 40A:4–53(b). The legislation even permits financing of such an appropriation by special emergency notes over a 5-year period. *N. J. S. A.* 40A:4–55. Only the intransigence of the Council prevents the city from employing that procedure in the present exigency.

We conclude that the foregoing recourse is preferable, in the peculiar circumstances presented, to that of declaring the expense of a revaluation to be a judgment against the city, enforceable by the statutory provisions cited above available for enforcing the payment of judgments against municipalities.

Since the purposes of the plaintiff will be achieved by the remedy herein provided for,[2] the civil commitment under appeal is unnecessary and will be set aside.

The judgment of the Law Division is modified as follows:

(a) The order for civil commitment is set aside;

(b) the matter is remanded to the Law Division for entry of an order authorizing the Board to enter into a contract of revaluation and for any work necessarily ancillary thereto, as agent of the city and at its expense, and for seeing to its completion and implementation for the earliest tax year possible; the funding thereof is to be from monies distributable to the city under *N. J. S. A.* 54:11D–1 *et seq.*, the State Treasurer being directed to remit such funds, or so much thereof as may be necessary, as authorized and certified by the Law Division, to the Board;

(c) costs against defendants.

*For modification*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.

---

[2] According to the information before us, each quarterly distribution of funds to Newark under *N. J. S. A.* 54:11D–1 *et seq.* is likely substantially to exceed the probable total cost of a revaluation project.

## ORDER

This matter having been duly considered by the Court, it is ORDERED that the motion to modify the decision of this Court dated March 31, 1977 is granted; and it is further

ORDERED that the funding of the contract of revaluation and ancillary work thereto is to be provided from funds distributable to the City of Newark under *N. J. S. A.* 54: 29A–24.1 to 24.6, *N. J. S. A.* 54:10–1 *et seq.,* and *N. J. S. A.* 54:10A–33.