KAHN, J.T.C.
This is the court’s opinion with respect to the complaint of plaintiff, Regent Care Center, Inc. (“taxpayer”), alleging that property located at 50 Polifly Road, Hackensack, New Jersey (a nursing home) was subject to an unconstitutional spot assessment *457 for the 1997 tax year by defendant, Hackensack (“municipality”).[1] The facts of this case are undisputed. The municipality’s last revaluation was in 1988. The Bergen County Board of Taxation, thereafter approved a reassessment plan for 1993, which resulted in the review of 11,209 line items, pursuant to N.J.A.C. 18:12A-1.14(c) and the State of New Jersey, Division of Taxation Handbook for New Jersey Assessors § 801.13 (1989). While construction of the subject improvement was not finished as of the 1993 reassessment, the property was assessed at $4,878,000 upon completion. On October 1, 1996, pursuant to an assessment maintenance plan, the $4,878,000 assessment was increased as follows:
Land 546,000
Improvements 7,544,300
Total $8,090,300.
The only witness at trial was the municipal Tax Assessor, who was actually called by the plaintiff. The tax assessor testified that prior to October 1, 1996, he became aware that a number of properties in Hackensack had dramatically increased in value.[2] To reflect this change in value, the tax assessor initiated an assessment maintenance plan that affected approximately 150 line items, including the subject property. The assessor testified that the assessment under review was based solely on the fact that he became aware that recent sales of similar nursing homes in neighboring municipalities yielded a per bed value significantly higher than taxpayer’s.[3] Since Hackensack’s average ratio for *458 1996, as promulgated by the Director, Division of Taxation, pursuant to N.J.S.A. 54:1-35.1, was 102%, assessed value is virtually equivalent to true value.
The sole issue before this court is whether the municipality’s October 1, 1996 revaluation of the subject property constituted an unconstitutional spot assessment. In support of this position, taxpayer claims the entire “assessment maintenance” process operates as an unconstitutional spot assessment because it lacks clear standards or directives. In its defense, the municipality claims the tax assessor was merely fulfilling his statutory obligations under N.J.S.A. 54:4-23, which states, in pertinent part:
All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall ... determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bonafide sale by private contract----
[N.J.S.A. 54:4-23.]
The uniformity clause of the New Jersey Constitution requires that all “[pjroperty be assessed for taxation under general and uniform rules.... [and] assessed according to the same standard of value ....” See N.J. Const. Art. VIII, § 1, ¶1(a). This constitutional mandate prohibits a municipality from levying an arbitrary and intentionally discriminatory assessment, commonly referred to as a spot assessment. See Township of West Milford v. Van Decker, 120 N.J. 354, 362, 576 A.2d 881 (1990). The New Jersey courts have not adopted a broad interpretation of what constitutes a spot assessment, and have limited its use as a tool to invalidate a particular assessment. See Corvado v. Township of Montclair, 18 N.J.Tax 200, 202 (Tax 1999). In fact, this court previously recognized that the only set of facts that could support a “spot assessment”' claim are those present in the “welcome stranger” system of taxation. Id. at 202, 206. This occurs when there is a reassessment of recently sold property based solely on its sales price, without reassessing similar but unsold properties. Id. at 202 (discussing Van Decker, supra).
The taxpayer in the present case does not allege that its property was assessed solely because it was sold. Rather, taxpayer seeks to have this court declare the process of reassessing *459 certain property on an annual basis, absent the formal guidelines associated with an official reassessment or revaluation as a form of unconstitutional spot assessment. This argument, however, runs contrary to New Jersey’s statutory scheme. See N.J.S.A. 54:4-23.[4]
Property tax assessments may be revised without a complete revaluation or reassessment. See Conrado, supra, 18 N.J.Tax at 202 (citing Van Decker, supra, 120 N.J. at 362, 576 A.2d 881). In fact, N.J.S.A. 54:4-23 imposes a duty on tax assessors to assess property annually, and to employ their judgment to determine full and fair value. In sum, because the tax assessor was merely complying with a statutory mandate, and the property was not reassessed solely because it was sold, this court finds that said assessment is not an unconstitutional spot assessment and therefore should be enforced.
Finally, Township of Washington v. Warren County Tax Adm’r., 19 N.J.Tax 1 (Tax 2000), and the variety of Pennsylvania and Georgia cases relied on by taxpayer are clearly distinguishable from the case presently at bar. Township of Washington, supra, holds that assessment maintenance does not guarantee applicability to a “page 8 formula.” It does not assist plaintiff in this case. Taxpayer’s reliance on the case law of other jurisdictions neither controls nor influences the outcome of this decision, because said holdings rely on different constitutional and statutory provisions than those presently at issue.[5] Moreover, New Jersey *460 courts do not consider out of state case law controlling regarding the interpretation of New Jersey Statutes. See Seventeen Thirty Corp. v. Director, New Jersey Div. of Taxation, 18 N.J.Tax 168, 183 (Tax 1999).

CONCLUSION

There is no evidence to indicate that the assessor used any factors other than sales of nursing homes in neighboring municipalities in his determination to increase the subject property’s assessment for 1997. Obviously, the assessor did not utilize the “sale of the subject” factor, since no such sale took place. For these and other reasons stated herein, this court finds that the assessment levied on taxpayer’s property is not an unconstitutional spot assessment. The Tax Court Administrator shall enter judgment affirming the assessment as follows:
1998
Land 546,000
Improvements 7,554,300
Total $8,090,300

 Complaints were filed for 1997, 1998, and 1999. However, this court, however, dismissed the 1997 case for failure to file the complaint within the requisite time permitted by the statute of limitations. See Regent Care Ctr., Inc. v. Hackensack City, 18 N.J.Tax 320 (Tax 1999). Moreover, the parties indicated that the 1999 case was also subject to a dismissal. Thus, the only case currently before this court is the complaint for 1998, which alleges a spot assessment as the only form of discrimination. Valuation is not at issue.

 These properties included, but were not limited to, rezoned commercial ptoperty along the Hackensack River, apartment buildings, and the subject nursing home.

 Taxpayer challenged neither the per bed value of the comparable sales nor the per bed value of the subject.

 It is both the assessor’s right and duty to assess property as of October I of each year. See Appeal of New York State Realty & Terminal Co., 21 N.J. 90, 99, 121 A 2d 21 (1956) (citations omitted). When fulfilling this duty, however, the "assessor has the authority to use his knowledge and judgment." Sage v Bernards Tp., 5 N.J.Tax 52, 52 (Tax 1982), aff'd o.b., 6 N.J.Tax 349 (App.Div.1984) (citations omitted).

 The Georgia cases cited interpret O.C.G A. § 48-5-306(a), which gives the assessor significantly less discretion in determining assessments than N.J.S A. 54:4-23. That statute requires "[T]he board [to] see that all taxable property within the county is assessed and returned to at its fair market value and that fair market values as between individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as nearly as possible only such taxpayer’s *460 proportionate share of taxes.” See Dade County v. Eldridge, 229 Ga.App. 401, 494 S.E.2d 106, 107 (1997). Moreover, the cases are also factually inapposite. For example, in striking down an assessment, the Eldridge court underscored the fact that there was no "evidence that any comparison ever was made between [taxpayer's] property and similar properties in determining whether a reassessment was appropriate or what any such reassessment should be." 494 S.E.2d at 107. The present case is clearly distinguishable in that the evidence indicated the municipality's tax assessor based the assessment on the value of other similar properties. Similarly, the Pennsylvania cases cited also interpret a more restrictive statute, which does not provide the assessor with the ability to update assessments to reflect current market value. Absent a reevaluation, Pennsylvania law restricts changes in assessments to situations where 1) a parcel of land is divided and conveyed away in smaller parcels; 2) when the economy of the county or any portion thereof has appreciated or depreciated to such extent that real estate values generally in that area are affected; and 3) when improvements are made to real property or existing improvements are removed from real property or destroyed. See Purdon’s Pa. Cons.Stat. § 5453.602a. N.J.S.A. 54:4-23, contrarily, specifically obligates the assessor to maintain assessments at fair market value on a yearly basis, as the assessor sees fit.