828 A.2d 332 (2003)
362 N.J. Super. 403
REGENT CARE CENTER, INC., Plaintiff-Appellant,
v.
HACKENSACK CITY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 2003.
Decided July 22, 2003.
*334 Steven R. Irwin, West Orange, argued the cause for appellant (Mandelbaum & Mandelbaum, attorneys; Mr. Irwin and Amber N. Beach, on the brief).
Donald J. Lenner argued the cause for respondent.
Julian F. Gorelli, Deputy Attorney General, argued the cause for amicus curiae Director, Division of Taxation (Peter C. Harvey, Acting Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Mr. Gorelli, on the brief).
Before Judges KING, WEFING and LISA.
*333 The opinion of the court was delivered by LISA, J.A.D.
We consider in this appeal whether the increase in assessment of a nursing home, owned by Regent Care Center, Inc. (Regent Care), constitutes a constitutionally impermissible spot assessment. The increase did not occur as part of a district-wide revaluation or reassessment. The nursing home was not the subject of a sale. Thus the increased assessment was not based on a sale of the subject property. The increase was the product of the assessor's assessment maintenance program, in which he reviewed all line items on the municipality's tax rolls and determined that certain commercial properties dramatically increased in value. In the case of the subject property, the assessor concluded it had been grossly underassessed, perhaps as a result of an oversight on the part of the former assessor. The assessor increased the assessments of about 150 properties, including Regent Care's. About 95% of the changes were increases in assessments.
After a trial, the Tax Court, in a published opinion, Regent Care Center, Inc. v. Hackensack City, 19 N.J.Tax 455 (Tax 2001), upheld the increased assessment, concluding it was not a constitutionally prohibited spot assessment. On appeal, Regent Care contends the trial court erred, asserting that because the increased assessment was not based on a change in the zoning, change in legal status or physical change to the property, and it was one of only a small group of properties for which assessments were changed, it is a prohibited spot assessment. Regent Care further urges that we declare the practice of "assessment maintenance" an unconstitutional device creating spot assessments.
*335 Finally, Regent Care argues that even if assessment maintenance is a constitutionally permissible practice, it was conducted in this case without the benefit of uniform guidelines from either the Division of Taxation or the Bergen County Board of Taxation, and therefore the resulting increase in the assessment of its property cannot be sustained. In a related argument, Regent Care contends the subsequently-adopted amendment to N.J.S.A. 54:4-23, L. 2001, c. 101, effective June 14, 2001, which requires submission by the assessor of a compliance plan to the county board of taxation and the Division of Taxation, and approval of the plan, as a prerequisite to changing assessments that are not part of a district-wide revaluation or reassessment, should be retroactively applied. The assessor in this case submitted no such plan because his actions occurred four years before enactment of the law requiring a plan. For the reasons expressed by the Tax Court in its decision on Regent Care's reconsideration motion, where the retroactivity issue was raised, Regent Care Center, Inc. v. Hackensack City, 20 N.J.Tax 181 (Tax 2001), we conclude that L. 2001, c. 101 is prospective only in its application and has no bearing on this case. See also Centorino v. Tewksbury Tp., 347 N.J.Super. 256, 267 n. 7, 789 A.2d 655 (App.Div.2001), certif. denied, 172 N.J. 175, 796 A.2d 892 (2002).
We reject the arguments advanced by Regent Care and affirm the decision of the Tax Court.

I
Although this was a trial, the facts are undisputed. Regent Care Center, Inc., supra, 19 N.J.Tax at 457. The only trial witness was Hackensack's assessor, Arthur Carlson, who was called by Regent Care. Ibid. We set forth the pertinent facts from the Tax Court opinion and from our review of the record.
The challenged assessment is for tax year 1998. Hackensack's last prior revaluation was in 1988, followed by a district-wide reassessment in 1993, approved by the Bergen County Board of Taxation, in which all 11,209 line items were reviewed pursuant to N.J.A.C. 18:12A-1.14(c) and the State of New Jersey, Division of Taxation Handbook for New Jersey Assessors § 801.13 (1989). The nursing home was under construction at the time of the 1993 reassessment, and upon completion was assessed at $4,878,000,[1] including land and improvement. This assessment was carried forward in 1994, 1995 and 1996.
As of October 1, 1996, for the tax year 1997, Carlson changed the assessment, leaving the land at $546,000, but increasing the improvement to $7,544,300, for a total of $8,090,300, which remained in place through the time of trial in 2001. Between 1993 and October 1, 1996, there were no physical changes to the property and no zoning changes. The property was in use throughout that period as a nursing home. This was one of the approximately 150 assessments[2] the assessor changed for tax year 1997 as part of what the Tax Court characterized as an "assessment maintenance plan." Regent Care Center, Inc., supra, 19 N.J.Tax at 457.
To provide context to the assessor's action with respect to the subject property, *336 we describe what he did and why he did it with respect to other properties as part of an overall process that resulted in adjustments to the 150 properties. Carlson initially characterized what he did as an "update." He explained that he reviewed every one of the approximately 11,200 property record cards for the entire city. He considered all available sales ratio data, all available "Chapter 91" income and expense information, N.J.S.A. 54:4-34, and applicable zoning changes. He concluded that, generally, between the 1993 reassessment and 1997 the values of single family homes did not increase.
The assessor determined that about 150 commercial properties were grossly underassessed, of which about 125 were vacant parcels on River Street and apartment buildings scattered throughout the city. The remainder were other commercial buildings, consisting mostly of shopping centers and other retail uses, which were also scattered throughout the city, and Regent Care's nursing home. The assessor determined that the River Street parcels doubled, and in some cases tripled, in value because of a change in zoning from manufacturing to retail. He found the apartment buildings and other commercial properties to be substantially underassessed based on his analysis of income and expense data. The 150 affected properties did not constitute all commercial properties in the city.
In addition to Regent Care's nursing home, there is one other nursing home in Hackensack. The assessor evaluated both of them. Based upon his knowledge of valuation methods, Carlson believed the most appropriate method for determining the value of a nursing home is based on comparable sale prices allocated on a per bed basis. He was aware of recent nursing home sales in surrounding communities in the range of $40,000 to $60,000 per bed. Regent Care's original assessment was at $24,000 per bed. The other nursing home in the city was appropriately assessed in the higher per bed range. He concluded that Regent Care's property was grossly underassessed, that it "stood out like a sore thumb." Referring to the assessment placed on Regent Care's property by his predecessor, Carlson said: "In my estimation it was underassessed at the time. I don't know what judgment or criteria he used. Obviously I wasn't there at the time. I just thought maybe it was an oversight on his part." Carlson reviewed but did not change the assessment on the other nursing home because no change was warranted.
The changes in the assessments of those 150 properties were not based on sales of those properties. This was not a piecemeal review of only some properties, some classes of properties, or some neighborhoods. Based upon a comprehensive review of every line item in the district, certain commercial properties were determined to be substantially underassessed and their assessments were raised. As stated, about 5% of the 150 properties were substantially overassessed and their assessments were lowered.
Regent Care did not present any evidence as to value, does not challenge the assessor's per bed valuation method, and does not contend its property is overassessed or assessed outside the corridor permitted by Chapter 123 (N.J.S.A. 54:1-35a). Hackensack's average ratio for 1996, pursuant to N.J.S.A. 54:1-35.1, was 102%, which is virtually equivalent to true value.
Regent Care filed an appeal challenging the 1997 assessment, the first year of the increase. However, the complaint was dismissed as untimely. Regent Care Center, Inc. v. Hackensack City, 18 N.J.Tax 320 (Tax 1999). Regent Care then filed a complaint challenging the assessment, carried *337 over in the same amount, for 1998. That is the case before us. We reject the argument of amicus that Regent Care is precluded from challenging in 1998 the increase in 1997 which is alleged to have been an impermissible spot assessment. The spot assessment issue was tried in the Tax Court and has been substantively presented to us on appeal. The City has not cross-appealed on the timeliness issue. Amicus takes the case as it exists and may not interject issues not raised by the parties. Federal Pac. Elec. Co. v. Department of Envtl. Prot., 334 N.J.Super. 323, 345, 759 A.2d 851 (App.Div.2000). The spot assessment issue is properly before us for substantive adjudication.
The Tax Court judge concluded that the assessor did not utilize the "sale of the subject" factor (since no such sale took place), that the assessor relied upon appropriate data (sales of nursing homes in neighboring municipalities) to determine the increased assessment, and that the assessor properly discharged his statutory obligation under N.J.S.A. 54:4-23 to assess all property annually at full and fair value. Regent Care Center, Inc., supra, 19 N.J.Tax at 457-60. He upheld the increased assessment. Id. at 460.

II
We first should make clear that the term "assessment maintenance" has not been precisely defined. Generally, it refers to the practice by which an assessor changes some assessments in a year when a district-wide revaluation or reassessment is not performed. The assessor's authority is derived from N.J.S.A. 54:4-23, which provided at the time of the assessment under review:
All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall ... determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bonafide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments....
Regent Care argues that any such change that is not directly related to a change in the zoning or legal status of a property or to a change in the property itself (an added assessment) or, for example, to correct an obvious mathematical or clerical error, per se constitutes a prohibited spot assessment and is not sustainable. We are thus urged to declare that all assessment maintenance is impermissible. We decline to do so. Such a sweeping declaration is not warranted and would be contrary to established precedent. Each case must be decided based on its facts. We decide only the case before us and evaluate Hackensack's assessment maintenance plan on its facts.
Alternatively, Regent Care argues that even if assessment maintenance, as generally described, were a permissible practice, it was impermissible here because no uniform standards existed to regulate the practice on a county-wide or state-wide basis. For the reasons we will discuss, we reject this contention as well.
The New Jersey Constitution requires that all property shall be "assessed for taxation under general laws and by uniform rules" and that "[a]ll real property assessed and taxed locally ... shall be assessed according to the same standard of value...." N.J. Const. art. VIII, § 1, ¶ 1(a). Taxpayers must be treated in a manner comparable to other similarly-situated taxpayers. Township of West Milford v. Van Decker, 120 N.J. 354, 361, 576 A.2d 881 (1990). Further, the equal protection clause of the Fourteenth Amendment to *338 the United States Constitution "protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." Id. at 362-63, 576 A.2d 881 (quoting Baldwin Constr. Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 341, 108 A.2d 598 (1954)).
In Van Decker, the Court determined that the practice of reassessing only properties that were the subject of a recent sale, while leaving undisturbed the assessments of other properties in the same class that have not been sold constitutes selective or spot assessments that violate these constitutional provisions. Id. at 357, 576 A.2d 881. The properties in Van Decker were reassessed solely as a result of the sale, and the revised assessment was based solely on the sale price. The practice was not saved from unconstitutional discrimination by compliance with Chapter 123.
The practice described in Van Decker is commonly known as the "Welcome Stranger" pattern and is commonly recognized as an intentionally discriminatory practice. Id. at 361-62, 576 A.2d 881. In declaring the Welcome Stranger practice unconstitutional, the Court said:
We note that it is arbitrary intentional discrimination that is unconstitutional. A municipality may revise assessments in years other than years of municipal-wide revaluation for legitimate reasons. See, e.g., Handbook for New Jersey Assessors, New Jersey State Div. of Taxation (1989) sec. 902.2 (increased property value based on new improvements), sec. 902.3 (addition of formerly-exempt property); and sec. 903.3 quoted at 361, 576 A.2d at 884; Schwam v. Township of Cedar Grove, 228 N.J.Super. 522, 550 A.2d 502 (App.Div.1988), certif. denied, 115 N.J. 76, 556 A.2d 1219 (1989) (reassessment of apartments converted to condominiums); Frieman v. Randolph Township, 216 N.J.Super. 507, 524 A.2d 453 (App.Div.1987), certif. denied, 108 N.J. 665, 532 A.2d 242 (1987), appeal dismissed, 110 N.J. 294, 540 A.2d 1276 (1988) (reassessment of all apartment complexes in township based on adoption of vacancy decontrol ordinance, and reassessment of all industrial and commercial properties based on study showing they were underassessed as a class). However, under no circumstances can appraised valuation of property be increased merely because it has been sold.

[Id. at 362, 576 A.2d 881 (emphasis added).]
Another panel of this court has recently reaffirmed the proscription against spot assessments in the Welcome Stranger context. Centorino, supra, 347 N.J.Super. 256, 789 A.2d 655; Schumar v. Borough of Bernardsville, 347 N.J.Super. 325, 790 A.2d 171 (App.Div.2001). These were both Welcome Stranger cases involving residential property owners who had recently purchased their homes. The panel did not establish new law, but applied the Van Decker holding.
In Centorino, the panel concluded that the changed assessment was based solely on the sale of the subject property, and the assessor's explanation that the change was based on an erroneous misclassification was unsupported by the record. Where the assessor's purported reason for a changed assessment is "so obviously subjective and discretionary" and, as acknowledged by the assessor, "really sort of vague," more is needed to take the case outside the Van Decker rule. Centorino, supra, 347 N.J.Super. at 264-65, 789 A.2d 655. The assessor "must establish additional objective proofs as to the property in question, and in relation to other properties in the neighborhood... to justify his statement that *339 the subject property was not singled out solely on the basis of its sale." Id. at 265, 789 A.2d 655 (emphasis added). There must exist "legitimate non-sales related justifications." Id. at 266, 789 A.2d 655 (emphasis added).
After analyzing and applying the Van Decker Welcome Stranger principles, the Centorino panel stated: "While Van Decker acknowledged that assessment maintenance may be appropriate in limited circumstances, we need not address the implications of the broader issue here." Ibid. The case before us is not a Welcome Stranger case.[3] There was no sale of the subject property here. We are required to address the broader issue of assessment maintenance beyond the scope of Van Decker, Centorino and Schumar.

III
The dominant principle of the State Constitution's uniformity clause is to mandate equality of treatment and burden. Baldwin, supra, 16 N.J. at 340, 108 A.2d 598. Performing a district-wide revaluation or reassessment every year would be the means best designed to meet that mandate. That is simply not feasible. Bergen County Bd. of Taxation v. Borough of Bogota, 104 N.J.Super. 499, 507, 250 A.2d 440 (Law Div.1969), aff'd o.b., 114 N.J.Super. 140, 275 A.2d 158 (App.Div.1971). Periodic revaluations or reassessments are feasible and are necessary to maintain uniform and non-discriminatory assessments. Essex County Bd. of Taxation v. City of Newark, 73 N.J. 69, 72, 372 A.2d 607 (1977).
Against this reality, N.J.S.A. 54:4-23 charges assessors with the obligation to keep the tax rolls current by assessing each property at its full and fair value each year. The assessor's determination is made "after examination and inquiry... in his judgment." Ibid. Fulfillment of this statutory obligation cannot, of course, conflict with constitutional limitations. Van Decker, supra, 120 N.J. at 357, 576 A.2d 881 (citing New Jersey State League of Municipalities v. Kimmelman, 105 N.J. 422, 522 A.2d 430 (1987)). In our view, the tension between the assessor's statutory duty to assess all properties each year at full value and the constitutional limitations mandating uniformity and equal treatment, must be evaluated in light of Van Decker's guiding principle that "it is arbitrary intentional discrimination that is unconstitutional." Id. at 362, 576 A.2d 881.
The question presented is what can an assessor do in the intervening years to fulfill his or her obligation without running afoul of the constitutional limitations. That the assessor cannot change assessments based solely on the sale of the subject property is firmly established. That practice is per se discriminatory.
The panel in Centorino was critical of the Tax Court opinion in the case which is now before us in this appeal:
Tax Court cases subsequent to Van Decker have attempted to put a spin on that case by applying a limited interpretation of what constitutes a spot assessment. They do so by attempting to find *340 exceptions and distinctions and to limit such discrimination claims solely to the "welcome stranger" situation in which "there is a reassessment of recently sold property based solely on its sales price, without reassessing similar but unsold properties." Regent Care Center, Inc. v. Hackensack, 19 N.J.Tax 455, 458 (Tax Ct.2001), discussing Township of West Milford v. Van Decker, 235 N.J.Super. 1, 561 A.2d 607 (App.Div.), aff'd, 120 N.J. 354, 576 A.2d 881 (1990).
[Centorino, supra, 347 N.J.Super. at 263-64, 789 A.2d 655.] We read this criticism as pertaining to the Tax Court's suggestion that unconstitutional spot assessments are limited exclusively to the Welcome Stranger situation. We agree with the Centorino panel that there is no such limitation. Other factual circumstances could exist in assessment maintenance programs that could constitute arbitrary intentional discrimination. We do not read the Centorino criticism of the Tax Court opinion in this case as pertaining to the refusal to categorically declare all assessment maintenance unconstitutional or to declare the conduct of Hackensack's assessor in this case unconstitutional. The panel did not comment on the ultimate holding of the Tax Court in this case.
Assessors cannot be expected to do nothing in years between district-wide revaluations or reassessments. Their role is not that of a caretaker. In Tri-Terminal Corp. v. Borough of Edgewater, 68 N.J. 405, 346 A.2d 396 (1975), the Court made this plain and acknowledged the proper role of assessment maintenance:
The law calls for the separate assessment of each parcel annually at its true value on the assessing date. While practicalities obviously preclude most assessors reviewing every assessment line item every year, there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district. It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor's function.

[Id. at 413-14, 346 A.2d 396 (internal citations omitted)(emphasis added).]
We have likewise acknowledged the role of proper assessment maintenance in Schwam v. Township of Cedar Grove, 228 N.J.Super. 522, 550 A.2d 502 (App.Div. 1988), certif. denied, 115 N.J. 76-77, 556 A.2d 1219 (1989). That case involved a legal change in the property's status when apartments were converted to condominiums. Id. at 526-27, 550 A.2d 502. We held they were properly reassessed and were not improperly singled out for selective or spot assessment. Id. at 526-28, 550 A.2d 502. We noted that although "assessors are prohibited from arbitrarily singling out property for increased assessment," they nevertheless "have a statutory obligation to monitor all available indicia of property value [fn] and to correct inequities in tax years other than years of district-wide revaluations. N.J.S.A. 54:4-23." Id. at 528, 550 A.2d 502 (emphasis added). The footnote in the last-quoted passage noted: "Where recent market values show a general increase in value, it may be that the tax assessor should be alerted to the need of a general revaluation." Ibid. n. 3.
Thus, adjusting an assessment for legitimate reasons is an appropriate exercise of the assessor's statutory obligation and is not arbitrary or discriminatory. This is the appropriate mechanism by which the assessor keeps the tax rolls current when individual properties, based *341 upon particularized, legitimate reasons, require adjustment. If other similarly-situated properties are overlooked and not also adjusted, the selection may be deemed arbitrary and discriminatory. There was no evidence of that in Schwam. Further, if the assessor, in the performance of the required monitoring function, observed a broad-based shift in market values, a district-wide revaluation or reassessment may be required.
In Frieman v. Randolph Tp., 216 N.J.Super. 507, 524 A.2d 453 (App.Div. 1987), certif. granted, 108 N.J. 665, 532 A.2d 242 (1987), appeal dismissed, 110 N.J. 294, 540 A.2d 1276 (1988), we approved increased assessments resulting from assessment maintenance programs in two taxing districts. Id. at 509, 524 A.2d 453. In Edison Township, because of concern that industrial and commercial properties were underassessed, the township conducted a study of these properties, resulting in increased assessments to about half of the more than 900 of them. In Randolph Township, four apartment complexes were reassessed based on an amendment to the rent control ordinance. Id. at 509-10, 524 A.2d 453. We upheld the denial of unlawful spot assessment relief, distinguishing Baldwin, because "in both townships the selection of properties for revaluation was not arbitrary but based upon a reasonable assumption that, as classes of properties, they might be underassessed; all properties within each of the affected classes were in fact reassessed." Id. at 510-11, 524 A.2d 453.
We recently upheld the rejection of a spot assessment claim, notwithstanding the impending sale of the subject property, where the increased assessment was supported by independent non-sales related evidence. Brunetti v. Cherry Hill Tp., ___ N.J.Tax ____, ____ _ ____, ___ A.2d ____, 2002 WL 32139430 (slip op. at 7-8)(App. Div.2002), certif. denied, 175 N.J. 547, 816 A.2d 1049 (2003). The assessor determined the property was grossly underassessed at $1,540,000 and raised it to $4,203,000, an amount roughly equivalent to the contract sale price of $4,325,000. Id. at ____ _ ____, ___A.2d ____ (slip op. at 1-3). We distinguished Centorino, noting that "unlike the illusory distinctions between classes of property that formed the basis for reassessment in Centorino, it is clear in this case that the nonexistence of claimed wetlands was a distinct and definable factor that could significantly affect property value for tax purposes." Id. at ____, ___ A.2d ____ (slip op. at 8). We concluded: "Thus we are left with an instance of assessment maintenance the legitimacy of which is fully supported by the evidence presented." Id. at ____, ___ A.2d ____ (slip op. at 10).
These cases illustrate the propriety of assessment maintenance conducted for legitimate non-discriminatory reasons in an equitable manner applicable to all properties of the same class. Van Decker did not alter these principles. Indeed, in Van Decker the Court listed Schwam and Frieman as examples of proper assessment maintenance practices. Van Decker, supra, 120 N.J. at 362, 576 A.2d 881. Thus, while condemning the Welcome Stranger practice in which an increased assessment is based solely on the sale of the subject property, the Court reaffirmed its approval of legitimate forms of assessment maintenance. Ibid.[4]

*342 IV
Applying these principles to the case before us, we are satisfied that the reassessment of Regent Care's nursing home did not constitute arbitrary intentional discrimination. The reassessment was implemented as part of a comprehensive review of all properties in the district. All commercial and industrial properties were evaluated. Those that were not underassessed, of course, were not changed. But they were evaluated and considered. Thus, those that were selected for increases were not selected arbitrarily, but based upon objective, non-sales related evidence, and in relation to other similarly-situated properties within the class.
Regent Care owned one of two nursing homes in Hackensack. Both were evaluated, again, based upon objective, non-sales related evidence. Application of the per bed formula is not disputed. The other nursing home was determined to be properly assessed based on that formula. Regent Care's nursing home was erroneously assessed at only about one-half its value using the per bed formula. Regent Care does not dispute this. Adjusting Regent Care's assessment was not the product of an arbitrary selection process. The increase of its assessment was made in conjunction with a fair and equitable analysis of similarly situated propertiesspecifically the only other nursing home, and generally all commercial and industrial property. Further, a determination was made that residential property values were not in need of adjustment. So there was no unfair shifting of the tax burden to one class of properties in preference to another. The increase in Regent Care's assessment was not based on any sale of the subject property. There was no sale. The increase was based on objective and appropriate data.
We reject Regent Care's contention that the absence of formal uniform guidelines pertaining to assessment maintenance renders the practice illegal. First, we note that guidelines do exist. The Handbook for New Jersey Assessors, New Jersey State Division of Taxation (1989), was cited with approval in Van Decker as a source of proper assessment maintenance. Van Decker, supra, 120 N.J. at 361-62, 576 A.2d 881. In particular, the Court cited sections of Chapter 9, which is devoted to assessment maintenance. Ibid. Further, assessors are trained, tested and certified professionals. See N.J.S.A. 54:1-35.25 and -35.30. Whether assessors exercise their judgment and discretion in fulfilling their obligations under N.J.S.A. 54:4-23 in a fair and non-discriminatory manner should be judged in each case based on what they did.
We do not find persuasive Regent Care's reliance on decisions from other jurisdictions substantially for the reasons expressed by the Tax Court judge. Regent Care Center, Inc., supra, 19 N.J.Tax at 459-60.
We are satisfied that the increased assessment of Regent Care's property was not a constitutionally impermissible spot assessment.
Affirmed.
NOTES
[1] This is the figure in the Tax Court opinion, Regent Care Center, Inc., supra, 19 N.J.Tax at 457. Carlson's testimony was that in 1990 the partial assessment was $3,279,000, in 1991 the completed assessment was set at $4,878,000, and as a result of the 1993 reassessment, the assessment was reduced to $4,390,200. At all times, the land component remained unchanged at $546,000.
[2] These were in addition to added assessments and other changed assessments not applicable here.
[3] Regent Care makes much of the overruling by Van Decker of Quinn v. City of Jersey City, 9 N.J.Tax 128 (Tax 1987). Township of West Milford v. Van Decker, 235 N.J.Super. 1, 8, 22, 561 A.2d 607 (App.Div.1989), aff'd, Township of West Milford v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990). We do not find this reliance persuasive because the disapproval of Quinn was limited "to the extent it appears to authorize selective increases in assessments for only those properties in a class which had been subject to recent sales." Id. at 8, 561 A.2d 607. Thus the disapproval was only in relation to the Welcome Stranger situation, which is not present in this case.
[4] Three recent Tax Court decisions have dealt with the spot assessment issue: Shippee v. Brick Tp., 20 N.J.Tax 427 (Tax 2002) (appeal pending); Freehold Borough v. WNY Properties L.P./Post & Coach, N.J.Tax 558 (Tax 2003) (motion for leave to appeal denied; pending trial as to valuation and discrimination); Mountain View Crossing Investors, LLC v. Township of Wayne, ___ N.J.Tax ____, ___ A.2d ____, 2003 WL 21788929 (Tax 2003) (judgments entered June 13, 2003; appeal period pending as of the date of this opinion). These are pending cases that are not before us, and we do not comment on them.