PER CURIAM.
Plaintiff BASF filed separate appeals from three final judgments of the Tax Court, which affirmed defendant Belvidere’s revised assessment of its property applicable to the 2004 and 2005 tax years and reduced the municipality’s assessment for the 2006 tax year to $7,761,300. Plaintiffs only arguments in each of the three appeals are that the Tax Court erred in concluding that Belvidere could reassess its property without complying with the requirements of N.J.S.A. 54:4-23, as amended by Chapter 101 of the Laws of 2001, and that Belvidere’s reassessments were made in bad faith. Because plaintiff presents the same arguments in all three appeals, we consolidate them.
N.J.S.A. 54:4-23 provides in relevant part:
[W]hen the [tax] assessor has reason to believe that property comprising all or part of a taxing district has been assessed at a value lower or higher than is consistent *418 with the purpose of securing uniform taxable valuation of property according to law for the purpose of taxation, or that the assessment of property comprising all or part of a taxing district is not in substantial compliance with the law and that the interests of the public will be promoted by a reassessment of such property, the assessor shall, after due investigation, make a reassessment of the property in the taxing district that is not in substantial compliance, provided that (1) the assessor has first notified, in writing, the mayor, the municipal governing body, the Division of Taxation in the Department of the Treasury, the county board of taxation, and the county tax administrator of the basis of the assessor’s determination that a reassessment of that property in the taxing district is warranted and (2) the assessor has submitted a copy of a compliance plan to the county board of taxation and to the Division of Taxation for approval____ Following a reassessment of a portion of the taxing district pursuant to an approved compliance plan, the assessor shall certify to the county board of taxation, through such sampling as the county board of taxation deems adequate, that the re-assessment is in substantial compliance with the portions of the taxing district that were not reassessed.
Judge Kuskin concluded in a reported opinion that N.J.S.A. 54:4-23 does not require a tax assessor who undertakes to reassess a single property to provide the notification specified therein and obtain the approval of the Division of Taxation and county board of taxation of a “compliance plan” for such reassessment. BASF Corp. Coating & Ink Div. v. Town of Belvidere, 22 N.J.Tax 550 (2005). In reaching this conclusion, Judge Kuskin relied upon (1) a regulation adopted by the Director of the Division of Taxation to implement N.J.S.A. 54:4-23 as amended by Chapter 101; (2) the document that the regulation specifies for use in submitting a compliance plan for approval, and (3) the Director’s responses to comments made to the regulation when it was first proposed. Id. at 559.
The judge also observed that:
The statutory scheme relating to the assessment process ... supports my conclusion that Chapter 101’s requirement for a compliance plan does not apply to a change in a single assessment. The applicable statutory scheme includes the first part of N.J.S.A. 54:4-23 which obligates the assessor to make an annual determination of value. Based on tins provision, our courts have recognized that annual assessment maintenance, without the necessity for a municipal-wide revaluation or reassessment, is an essential element of the assessment process.
Assessment maintenance is “the practice by which an assessor changes some assessments in a year when a district-wide revaluation or reassessment is not performed. The assessor’s authority is derived from N.J.S.A. 54:4-23----” Regent Care Center, Inc. v. City of Hackensack, 362 N.J.Super. 403, 411-12, 828 A.2d 332 (App.Div.2003), [certif. denied, 178 N.J. 373, 840 A.2d 258 (2003)]. The Appellate Division, in Regent Care, described the need for, and importance of, assessment maintenance.
*419 Assessors cannot be expected to do nothing in years between district-wide revaluations or reassessments. Their role is not that of a caretaker. In Tri-Terminal Corp. v. Bor. of Edgewater, 68 N.J. 405, [413-14, 346 A.2d 396] (1975), [cert. denied, 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976)], the Court made this plain and acknowledged the proper role of assessment maintenance:
The law calls for the separate assessment of each parcel annually at its true value on the assessing date. While practicalities obviously preclude most assessors reviewing every assessment line item every year, there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district. It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor’s function.
Thus, adjusting an assessment for legitimate reasons is an appropriate exercise of the assessor’s statutory obligation and is not arbitrary or discriminatory. This is the appropriate mechanism by which the assessor keeps the tax [rolls] current when individual properties, based upon particularized, legitimate reasons, require adjustment.
[Regent Care, supra, 362 N.J.Super. at 416-17, 828 A.2d 332.]
I conclude that Chapter 101 supplemented, but did not modify, the provisions of N.J.S.A. 54:4-23 identified in Regent Care, supra, 362 N.J.Super. at 412, 828 A.2d 332, as proriding the statutory basis for assessment maintenance. Chapter 101 requires a compliance plan in connection with assessment maintenance consisting of changes in assessments in a neighborhood or area of a municipality but not in connection with assessment maintenance consisting of a change in the assessment on a single property.
[Id. at 564-66.]
Based on his interpretation of Chapter 101, Judge Kuskin denied BASF’s motions for summary judgments in its actions challenging the $9,260,600 assessment of its property applicable to the 2004 and 2005 tax years and seeking a reduction of that assessment to the $6,728,150 applicable to the 2006 tax year. Id. at 553.
Judge Kuskin subsequently concluded in another published opinion that the $9,500,000 assessment of BASF’s property was valid as applied to the 2004 and 2005 tax years, but he reduced the assessment to $7,761,300 as applied to the 2006 tax year. BASF Corp. Coating & Ink Div. v. Town of Belvidere, 23 N.J.Tax 551 (2007). BASF’s appeal does not challenge any of the conclusions reached in this second opinion, and Belvidere has not cross- *420 appealed from the reduction in the assessment applicable to the 2006 tax year.
We agree with Judge Kuskin’s interpretation of Chapter 101 and therefore affirm the denial of BASF’s motions for summary judgment substantially for the reasons set forth in his published opinion. In the absence of a clear indication of a legislative intent to require a municipality to submit a compliance plan to the Division of Taxation and county board of taxation any time it undertakes to reassess an individual property in order to discharge its responsibility for assessment maintenance, we are unwilling to read Chapter 101 to impose a burden upon municipalities to submit such plans or upon the Division of Taxation and county boards of taxation to review them.
The “bad faith” argument presented by plaintiff under Point II of its brief is clearly without merit and does not warrant discussion. R. 2:11—3(e)(1)(E).
Affirmed.