AXELRAD, J.T.C.
This is a local property tax matter in which the taxpayer has challenged the property tax assessments on Block 123.01, Lot 18.08 and Block 120.30, Lot 51.01 in Stafford Township, Ocean County, New Jersey, for the 1999 tax year. The assessments are as follows:
Block 123.01, Lot 18.03 Block 120.30, Lot 51.01
Land $ 224,000 Land $3,560,000
Improvements -0- • Improvements -0-
Total $ 224,000 Total $3,560,000
*624 The taxpayer’s attorney filed an appeal with the Ocean County Board of Taxation on August 18, 1999 and sought review pursuant to the time extension provisions of N.J.S.A. 54:3-21.4. The petition and filing fee were returned along with a county board judgment of dismissal, which was entered on August 27, 1999, indicating Judgment Code “5E” (“appeal not timely filed”). The judgment was accompanied by a cover letter dated August 30,1999 from the county tax administrator referencing R.S. [N.J.S.A] 54:3-21, which provides that an appeal of an assessment on the regular tax list shall be filed on or before April 1st of the tax year. The taxpayer then filed this complaint in the Tax Court on September 17,1999.
The municipality filed a motion to dismiss the taxpayer’s complaint for untimely filing based on the fact that the complaint was not filed by April 1, 1999, the statutory deadline imposed by N.J.S.A. 54:3-21. In support of its motion the municipality submitted the certifications of Arlene Oliver, the Tax Assessor, and Nicholas Seutti, an employee of Tree Services, the company which provided the mailing service of the notices of assessment mandated by N.J.S.A 54:4-38.1, L. 1991, c. 75, (“Chapter 75 notices”) for the municipality. In opposition, the taxpayer submitted the certifications of Michael Bittner, its controller, and Elaine Devecehio, its receptionist. Upon the court’s direction, the recoi’d was supplemented by them testimony.
The taxpayer purchased thirteen parcels of vacant land in the township, including the subject properties, in January and February of 1998. The property at issue was an abandoned mining pit and the taxpayer recently received local board approval to develop the vacant tracts for a significant project of a 452-unit modular home park. For the 1999 tax list, the thirteen properties were consolidated into five parcels and assigned new Block and Lot numbers; the overall assessment was significantly higher than the 1998 assessment. For example, one of the properties under appeal, re-classified as Block 120.30, Lot 51.01 for the 1999 tax year, was designated on the 1998 tax assessment list as Block 120, *625 Lots 47, 48.01, 49, 51, 52, 53, 54 and 56 and had a total assessment of $205,900. For 1999 the assessment was $3,560,000.
The taxpayer contends that it did not receive any Chapter 75 notice of the 1999 assessment for any of its properties in the township. The taxpayer states that the first and only notification that the parcels were consolidated and renumbered, and that the assessment was higher for the 1999 tax year, was its receipt of the third quarter tax bills for each of the five parcels in July or August of 1999. As such, the taxpayer submits that its federal and state due process rights would be violated if the court dismissed its complaint.
The evidence presented by the municipality indicated that the tax assessment list certified by the assessor to the Ocean County Board of Taxation and the Board’s ensuing “Tax Assessment Notification List” properly designated the taxpayer as the owner of various parcels, including the two under appeal, with its proper mailing address of “8000 Sagemore — Suite 8301, Marlton, NJ 08053” for the 1999 tax year. According to Ms. Oliver, the municipality contracted with Tree Services, a mailing service, to pick up the Chapter 75 postcards, which were generated at the Ocean County Data Processing Center after the list was certified in January 1999, and to send them out to the property owners. The notices contain the return address of the township municipal building, and, if any are returned, Ms. Oliver’s office keeps track of them and resends them if they had been improperly addressed. The assessor did not receive any returned Chapter 75 cards relating to the taxpayer’s properties.
According to Mr. Scutti, Tree is a computer and mailing house service in Toms River, which generates and mails out Chapter 75 notices for twenty-three municipalities in Ocean County, including Stafford Township. Once Tree establishes contract agreements with municipalities, it orders the cards for each of them, checks that the cards were printed according to specification, and delivers the cards to the Ocean County Data Processing Department, using a separate box for each municipality, along with a list of the municipalities. For each municipality, Data Processing prints the *626 cards on a continuous form, automatically separates and assembles them in zip code order, generates a “computer summary of forms by zip,” puts them back in the boxes, and notifies Tree that the run has been completed. A representative of Tree brings the boxes and computer summary back to its premises, and, for each municipality, Tree runs the cards through a metering machine for bulk mailing, or affixes other postage as necessary, and places the cards into post office trays. The cards are not physically counted against the summary sheet, but rather are finger-searched to insure they are in zip code order. If any card is damaged running through the machinery, it is replaced with a hand-typed card, and if any of the notices are out of order, which occurs “very seldom,” they are properly filed. The cards are bundled by zip codes and elastic bands and placed in post office trays, which are then taken to the Toms River Post Office. The post office processes the mail, and within a few days Tree receives a receipt for the total number of pieces of bulk mailing processed for all of the municipalities.
According to the proofs submitted by the municipality, this business procedure was followed for the 1999 tax year. The zip code summary generated by Data Processing indicates that 14,095 cards were printed for Stafford Township, and a copy of the summary was received by the assessor on January 29, 1999. Mr. Scutti was not aware of any problem or failure with any of these cards being assembled or going out. According to the “Postal Service Permit System Statement of Mailing” sent to Tree, fifty-six trays containing 150,150 pieces were processed by the post office for bulk mailing on January 30, 1999, for twenty-three municipalities, including Stafford Township.
N.J.S.A. 54:4-38.1 mandates that:
Every assessor, prior to February 1, shall notify by mail each taxpayer of the current assessment and preceding year’s taxes. Thereafter, the assessor or county board of taxation shall notify each taxpayer by mail within 30 days of any change to the assessment____
For a discussion of the legislative history and policy considerations of this statute and the difference between an “assessment notice” and notice of “change of assessment” see Centorino v. Tewksbury Township, 18 N.J.Tax 303, 310-13 (Tax 1999).
*627 “New Jersey cases have recognized a presumption that mail properly addressed, stamped, and posted was received by the party to whom it was addressed. The conditions that must be shown to invoke the presumption are (1) that the mailing was correctly addressed; (2) that proper postage was affixed; (3) that the return address was correct; and (4) that the mailing was deposited in a proper mail receptacle.... ” SSI Medical Services, Inc. v. State, Dept. of Human Services, 146 N.J. 614, 621, 685 A.2d 1 (1996) (citations omitted). Although proof of mailing can be demonstrated by evidence of habit or routine practice, “evidence of office custom requires other corroboration that the custom was followed in a particular instance, in order to raise a presumption of mailing and receipt and meet the preponderance of the evidence standard.” Id. at 622-23, 685 A.2d 1.
As our State Supreme Court stated:
In all cases, courts should evaluate the nature and worth of the corroborative evidence offered to determine whether it meets the preponderance of the evidence standard and raises a presumption of mailing and receipt. As the forms of communication change, different proofs will have to be established in order to demonstrate mailing.
[Id. at 624 n. 1, 685 A.2d 1],
The court finds that the totality of the evidence presented by the municipality as to the routine business custom and the specific practice followed in January 1999 as to the assembly and mailing of the Chapter 75 cards meets the preponderance of evidence standard sufficient to establish a presumption of receipt by the taxpayer of these cards for the 1999 tax year for the parcels under appeal. The evidence of office custom and corroborating evidence that the custom was followed in this particular instance establish the four conditions of correct address, proper postage, correct mailing address, and depositing at the post office as to the subject notices.
This presumption of receipt is not undermined by the facts that Tree did not retain a copy of the assessment notices that were mailed, Mr. Scutti cannot pinpoint the exact day the cards were picked up from Data Processing, and none of Tree’s staff matched every card to the computer list. Considering the fact that in 1999 *628 Stafford Township had 14,095 Chapter 75 cards printed, and for Stafford Township and twenty-two other municipalities, Tree sent out 150,150 total pieces in one bulk mailing, it would be unreasonable to impose upon the municipality the burden of presenting testimony and evidence of the actual printing, assembling, and mailing of the specific noi es for the properties under appeal. As the Court recognized in SSI, a lower standard of proof may be acceptable in certain mailing situations to invoke the presumption of receipt, which this court finds can reasonably be extended to include the bulle processing and mailing that occurs in connection with the Chapter 75 tax assessment notices:
[WJhere the business organization is large, the nature of the business operations is complex, and the items mailed on a daily basis are voluminous, it may not be possible for individuals engaged in mailing activities to recall actual mailing of a document or whether the custom or practice of mailing was followed on a given day____In such cases, other corroborating proof creating the reasonable inference that the custom was followed on the given occasion may suffice to establish proof of mailing.
[Id. at 624, 685 A.2d 1].
The municipality used a reputable computer and mailing house service, which handled the processing and bulk mailing of Chapter 75 cards for the majority of the municipalities in the county, as well as generating tax lists and bills for a number of municipalities and the county board itself. Tree's business custom of assembling and mailing the Chapter 75 cards, as well as the procedure followed for the 1999 tax year, demonstrate sufficient indicia of trustworthiness to create the reasonable inference that the custom was followed on this occasion. The cards were computer generated by the county Data Processing Department based on the tax list which accurately reflected the taxpayer’s address; the cards for each municipality were printed and kept separate by Data Processing and Tree; the cards were finger-searched by Tree’s staff for damage or other problems, of which there were none in 1999; and the cards were bundled and banded by zip code and placed in postal trays. Furthermore, the testimony and postal service receipt indicate that the notices were properly metered and bundled for bulk mailing, contained the return address of the municipality, and were delivered to and processed by the Toms *629 River Post Office. The entire process, from the printing of the notices to their mailing, occurred within a short period of time. In addition, the subject cards were not returned to the assessor, which strengthens the presumption of receipt.
This “presumption of receipt derived from proof of mailing is ‘rebuttable and may be overcome by evidence that the notice was never in fact received.’ ” Id. at 625, 685 A.2d 1 (citations omitted). The taxpayer’s receptionist and controller testified about the routine office practice and them recollection of the facts and circumstances surrounding the Stafford Township properties. The taxpayer is a large real estate development company which owns and operates apartments, office buildings, industrial buildings, a mobile home park, shopping centers, and similar properties in Evesham Township, Maple Shade, Mt. Laurel, and, as of 1998, Stafford Township. According to Ms. Devecchio, who has been the receptionist for the past six years, on a daily basis the postal carrier delivers an average of approximately fifty pieces of mail directly to her office, which she stamps and sorts, and then gives the controller all the banking and tax bills. In her years as receptionist, she had never been made aware that she had lost a tax document. Ms. Devecchio did not remember receiving any tax notifications from Stafford Township in 1999, although she acknowledged that the notices could have been delivered to the taxpayer’s office. She did remember seeing the notice for the 2000 tax year, however, which stuck in her mind because she was used to receiving notices from the other municipalities, and Stafford Township was one of the taxpayer’s new properties.
The controller, Michael Bittner, who has been employed by the taxpayer for approximately three years, testified about the history of the purchase of the Stafford Township properties. The purchases occurred in early 1998, the taxpayer received some of the tax bills for the second quarter 1998, and the controller had several conversations in 1998 and 1999 with the Tax Collector’s office because of “confusion” in the Tax Collector’s office, as well as his, regai-ding the status of some of the parcels. According to Mr. Bittner, only after receiving the tax bills did he learn that *630 there were several jointly owned Blocks and Lots, which apparently created problems of duplicate payments and allocation' of the tax bills between the co-owners. As a result, he made a list of the properties owned by the taxpayer and spoke with a member of the Collector’s staff, after receiving the tax bills through the second quarter 1999, to ensure that the taxes were paid on all the parcels. He was unaware that the Block and Lot designations had been changed for the 1999 tax year until he received the thud quarter bills in August, 1999.[1] Mr. Bittner never had any conversations with the Tax Assessor’s Office during the relevant time period.
Mr. Bittner further testified that, as controller, he'is responsible for paying the tax bills and monitoring the assessments so that, when he receives the Chapter 75 cards, he prepares a spreadsheet for the owner in which he compares the yearly assessments. He expects to receive the notices in February, and, in fact, received thirty-three 1999 assessment notices from seven different municipalities in which the taxpayer owns and operates property. Ac-, cording to Mr. Bittner, he never received any Chapter 75 cards from Stafford Township for the 1999 tax year, and his fust notice that the assessment on the subject parcels had been significantly increased from the previous year was when he received the third quarter tax bills. He testified that, if he had received the notices indicating a significantly higher assessment for 1999 than for 1998, he would have attached á separate memo to the spreadsheet and promptly sent it to the owner. The controller explained that it did not seem “unusual” to him when he did not receive the Stafford Township notices because of the “confusion” of co-ownership of some of the Blocks and Lots as designated in 1998. Mr. Bittner *631 did not think about contacting anyone in the Township, however, to inquire about the missing notices.
The taxpayer submits that, since it did not receive the notices of assessment for the subject properties and, therefore, did not timely file appeals by April 1, 1999, the principles of due process under the U.S. and New Jersey Constitutions require an extension of the statutory filing deadline of N.J.S.A. 54:3-21 to a reasonable time after receipt of the tax bills. See U.S. Const. amend. XIV, 8 1; N.J. Const., art. 1, ¶ 1; Township of Montville v. Block 69, Lot 10, 74 N.J. 1, 376 A.2d 909 (1977). The taxpayer relies upon the cases of City of Camden v. Camden Masonic Association, 9 N.J.Tax 331 (Tax 1987), aff’d sub nom. City of Camden v. Block 21, Lot 214, 11 N.J.Tax 88 (App.Div.1989) and Centorino v. Tewksbury Township, supra, 18 N.J.Tax 303 in support of its position that it is entitled to notice of and opportunity to challenge its 1999 assessment in a judicial forum. In the Camdeyi Masonic case the city stipulated that its assessor gave no notice of the revocation of the property’s exempt status and, in contravention of the certified mailing requirements of the omitted assessment statute, N.J.S.A. 54:4-63.35, no notice that an omitted assessment on the property was being, or had been, imposed. Furthermore, the collector was unable to provide any information to indicate the mailing of the omitted assessment tax bills as required by N.J.S.A. 54-63.36 and, in fact, subsequent bills were improperly addressed to a nonexistent street in another town. No testimony was presented as to why the bills were mailed to that address. As the property had been exempt for sixty years, without the requisite statutory notice the owner would have had no reason to know that the tax exemption had been terminated, and, thus, did not have the opportunity to appeal the assessments or pay the taxes. The matter came before Judge Lario pursuant to an in rent tax foreclosure proceeding on tax sale certificates acquired by the city for the subject property. Judge Lario held that the totality of these circumstances necessitated an extension of the filing deadlines for a reasonable period of time.
*632 In Centorino this court determined that equitable principles necessitated the extension of the filing appeal deadline under N.J.S.A 54:3-21 and expressly limited its holding to the “unique facts and circumstances” presented in that case. Centorino v. Tewksbury Tp., supra, 18 N.J.Tax at 320. In the Centorino case the municipality admitted that the assessor had actual knowledge of the taxpayer’s purchase of the subject property prior to the assessor’s certification of his tax list to the county, that he did not change his records until approximately one year later, and, as a result, the Chapter 75 notice was mailed to the prior owner and not properly addressed to or received by the current taxpayer. Accordingly, since the notice of assessment was undisputedly mailed to the wrong person, it was clearly insufficient to create a presumption of receipt under the conditions set forth in SSI Medical Services, Inc. v. State, Department of Human Services, supra, 146 N.J. 614, 621, 685 A.2d 1.
The relevant facts regarding mailing, as well as the equitable considerations in the eases cited by the taxpayer, are factually inapposite to the present case. There was substantial testimony and evidence presented by Stafford Township as to the routine business custom regarding the printing, assembling, and mailing of the Chapter 75 cards and corroborating proof that the custom was followed in this instance. As previously discussed, the reliability of the computerized tax assessment notification list and computer generated Chapter 75 notices for twenty-three municipalities in Ocean County, Tree’s business custom of assembling and mailing the cards for these municipalities, along with the procedure followed for the 1999 tax year for the 14,095 cards for Stafford Township, demonstrate sufficient indicia of trustworthiness to create the reasonable inference that the custom was followed with respect to the taxpayer on this occasion and that the subject cards were correctly addressed to the taxpayer, metered with proper postage, contained the return address of the municipality, and were processed by the Toms River Post Office on January 30, 1999 as part of a bulk mailing of 150,150 assessment notices for twenty-three municipalities, including Stafford Township. As such, the evidence was sufficient to create the presump *633 tion that the Chapter 75 notices were received by the taxpayer. This presumption of receipt was strengthened by the fact that these cards were not returned to the assessor.
The court finds that the evidence presented by the taxpayer as a matter of fact is insufficient to rebut this presumption of receipt because the taxpayer failed to establish by a preponderance of the evidence that it did not receive the 1999 Chapter 75 notices of assessment. The receptionist did not remember receiving any of the 1999 assessment notices from Stafford Township, although she acknowledged that the notices could have been delivered to the taxpayer’s office. Furthermore, the court does not find the controller’s testimony that he did not receive any 1999 assessment notices from Stafford Township to be credible. The controller admitted that there was significant confusion in his office regarding the Stafford Township properties from the time of their purchase in early 1998 and continuing into 1999 because of the co-ownership of several of the Blocks and Lots and problems of duplicate payments and allocation of the tax bills between the co-owners. Furthermore, if, as he testified, after receipt of the Chapter 75 cards the controller routinely prepared a spreadsheet for the owner comparing the assessments from year to year for each of the parcels owned by the taxpayer, it is unlikely that he would have left a gaping hole as to the thirteen parcels purchased in Stafford Township.
Even if the court believed that the taxpayer did not receive the subject Chapter 75 cards in February 1999, it does not find that equitable relief is justified in the context of the circumstances surrounding this particular taxpayer. This case has neither the facts nor the equities that were present in the Centori.no case which justified a limited extension of the statutory filing deadline in that matter. Most importantly, there is sufficient evidence to demonstrate that the subject Chapter 75 cards were properly addressed, metered, and mailed to the taxpayer, thus triggering the presumption of receipt. In the Centor'mo case, however, the Chapter 75 card was undisputably addressed to the wrong person, which precluded the presumption of receipt and supported the *634 taxpayer’s claim that she did not receive notice of the assessment. Furthermore, as distinguished from Centorino, here the subject notices were not returned to Stafford Township, and, if they were not delivered to the taxpayer, there is no evidence of where else they could have gone.
Furthermore, the municipality fulfilled its mailing obligation by February 1, 1999, under N.J.S.A. 54:4-38.1. As opposed to the omitted assessment statute referenced in the Camden Masonic case or the Chapter 91 notice of income and expenses contained in N.J.S.A 54:4-34, there is no requirement in the statute that the notices be sent by certified mail. In addition, although the statute mandates that the assessor notify the taxpayers by mail, in a municipality where there are 14,095 ratables, common sense dictates that this task can be delegated to a reputable computer and mailing house service, which is the practice in most municipalities.
On the other hand, the taxpayer is a sophisticated real estate development company which owns properties and operates commercial enterprises in a number of municipalities. Both the receptionist and controller had actual knowledge that municipalities were obligated to send out annual notices of assessment by February 1. Over the course of several years, the taxpayer received numerous Chapter 75 notices and, in fact, the controller testified that he received thirty-three 1999 Chapter 75 notices from seven other municipalities in which the taxpayer owned and operated property. As such, if the controller did not receive any notices from Stafford Township for'the thirteen parcels purchased in that municipality, even if he did not consider it “unusual” because of the confusion of co-ownership of some of the Blocks and Lots, ordinary, prudent business practice would have dictated a call to the assessor’s office in February or March of 1999 to inform the assessor that the taxpayer had not received the notices and to inquire about the assessments. This obligation to inquire about the 1999 assessments was even more pressing where the controller knew that the taxpayer had recently received local board approvals to develop the vacant tracts for a significant project, a 452-unit modular home park. The undisputed evidence, *635 however, is that in 1999 the controller never contacted the tax assessor’s office to notify them about the claimed “missing” cards or to make any inquiry about the assessments of the subject properties for the 1999 tax year. The controller contacted only the tax collector’s office in early 1999 when he did not receive all of the tax bills (because some had been sent to the co-owners) so that he could make certain that the taxpayer’s share of all of the taxes were paid for the thirteen parcels.
The strict jurisdictional rule established by N.J.S.A. 54:3-21, that an appeal must be filed by April 1 of the tax year, has been applied consistently by the courts of this State to taxpayers and to governmental entities that have missed the statutory filing date. F.M.C. Stores Co. v. Bor. of Morris Plains, 100 N.J. 418, 495 A.2d 1313 (1985); Hovbilt, Inc. v. Howell Tp., 138 N.J. 598, 651 A.2d 77 (1994); Danis v. Middlesex County Bd. of Taxation, 113 N.J.Super. 6, 272 A.2d 542 (App.Div.1971); Newark v. Block 322, Lots 38 and 40, 17 N.J.Tax 103 (Tax 1997); Bonsangue v. Little Egg Harbor Tp., 17 N.J.Tax 439 (Tax 1998). It is well established that “[sjtrict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government” and that the failure to file a timely appeal from a real property tax assessment is a “fatal jurisdictional defect.” F.M.C. Stores Co. v. Bor. of Monis Plains, supra at 424-25, 495 A.2d 1313. The sound policy basis for this strict rule is the significant need of municipal governments to “ascertain the amount of taxable ratables within [their] jurisdiction in order that [they] might adopt a responsible and fairly accurate budget.” Galloway Tp. v. Petkevis, 2 N.J.Tax 85, 92 (Tax 1980).
The taxpayer’s complaint challenging the property tax assessments on the subject parcels for the 1999 tax year was filed with the county board on August 18, 1999, far beyond the April 1, 1999 statutory filing deadline. As such, the court will grant the munici.pality’s motion to dismiss the taxpayer’s complaint for untimely filing.

 As Stafford Township operates on a January 1 through December 31 fiscal year, the true amount of the tax for the 1999 year was not as yet determined by February 1 and May 1, so that the amount payable for each of these installments was "one-quarter of the total tax finally levied” against the property for the 1998 year. The amount payable for the third and fourth installments, due August 1 and November 1, 1999 was the "full tax as levied” for the 1999 year, "less the amount charged as the first and second installments, divided evenly between the two installments.” N.J.S.A. 54:4-66(c).