SUNDAR, J.T.C.
This opinion rules on the parties’ respective motions for summary judgment as to this court’s subject-matter jurisdiction for *164 tax years 2009 and 2010. Based on the facts in evidence, and for the reasons more fully explained below, the court finds that the incorrect mailing addresses used on the 2009 notices of assessment were not sufficient bases to excuse plaintiffs’ failure to timely challenge those assessments in the Tax Court. Further, plaintiffs did not appeal their 2010 assessments. Plaintiffs’ allegation that defendant’s assessments are unconstitutionally excessive and that portions of the assessed properties are exempt as being used for a public purpose do not toll or waive application of the statute of limitations. Therefore, this court does not have jurisdiction pursuant to N.J.S.A. 54:4-21 over both these counts of the complaint. However, plaintiffs’ allegation that the tax sale certificate is void because it violates the Green Acres Act will survive and will be decided by this court. Until its resolution, the stay and injunction against proceeding with the tax sale shall continue to remain in place.
PROCEDURAL HISTORY[1]
Defendant, Township of Livingston (“Livingston”), imposed local property tax assessments upon forty (40) properties used and known as the East Orange Water Reserve (“Subject”) for tax years 2009 and 2010. It then issued a tax sale notice on September 28, 2010, against Block 6300, Lot 18, a 95.66-acre parcel of the Subject, due to delinquent property taxes for the fourth quarter 2009. The tax sale was scheduled for October 29, 2010.
Plaintiffs, City of East Orange and the Board of Water Commissioners (“East Orange”), filed a complaint with the New Jersey Superior Court in December 2010, seeking temporary restraints and injunctive relief enjoining Livingston from conducting the tax sale.[2] The complaint stated three separate counts for relief: (i) *165 Livingston’s assessments were grossly excessive thus, erroneous and unconstitutional; (ii) the proposed tax certificate sale violated the New Jersey Green Acres Land Acquisition and Recreation Opportunities Act, N.J.S.A. 13:8A-35 et seq. (“Green Acres Act”); and (iii) portions of the Subject were statutorily tax-exempt as being used for “public purposes” pursuant to N.J.S.A 54:4-3.3. East Orange also alleged that for tax year 2009, it never received the assessment notices because 32 of the 40 notices were incorrectly addressed to “East Orange, City of, City Hall, East Orange, NJ, 07019,” while the other 8 were incorrectly addressed to “East Orange, City of, 99 So. Grove Street, East Orange, NJ, 01018.”
On February 14, 2011, the Chancery Division enjoined Livingston from selling the tax sale certificate or acting upon the tax assessments. Subsequently, it transferred the matter to this court. The Chancery Division continued the status quo of the injunction “until such time as the issues are determined.”
Both parties then moved for summary judgment. Livingston sought dismissal of the complaint for lack of subject-matter jurisdiction. East Orange claimed that for 2009 it never received the assessment notices within the appeal deadline, and that for both tax years 2009 and 2010, the appeal deadline should be relaxed.

FACTS

The facts are as established by testimonial and documentary evidence provided to the court in the motions and at the plenary hearing. Livingston presented testimony of its assessor; its tax collector; Vital Communications, Inc. (“Vital”), a company that performs the bulk mailing services for Livingston; and Appraisal Systems, Inc. (“Appraisal Systems”), the company that performed the 2009 revaluation for Livingston. East Orange presented the testimony of Harry L. Mansmann, Executive Director of the East Orange Water Commission (“Water Commission”).
For tax years 2008 through 2010, Livingston sent assessment notices (or “Chapter 75” cards) through Vital. In March 2009, Vital mailed the Chapter 75 cards to, among others, East Orange, for the Subject. The return address on the cards contained the assessor’s office address. Thirty-two Chapter 75 cards were *166 addressed to “East Orange, City of, City Hall, East Orange, NJ, 07019.” Eight were addressed to “East Orange, City of, 99 So. Grove Street, East Orange, NJ, 01018.” These addresses were taken from MOD-IV, the computer database in the assessor’s office. However, the tax collector’s office, which has its own computer database, sent tax bills to East Orange at 99 South Grove Street, East Orange, NJ 07018, for several prior tax years, including tax year 2009.
None of the 2009 assessment notices were returned as undeliverable to the assessor’s office for tax year 2009 (or for any other prior tax year). The assessor’s office never received any notice by East Orange of a change of address/es at any time until 2009. The assessor however conceded that her office and the tax collector could have different addresses for the same property because the two offices “were on two different [computer] systems.” She also conceded that the zip code “01018” used in 8 assessment notices should have been “07018.” A printout from the website for the City of East Orange lists the City Hall address as 44 City Hall Plaza, with a zip code of 07017 as opposed to 07019 used in the 32 Chapter 75 notices and on the one tax bill for Block 6100 Lot 7.
Local property tax bills for the third quarter of 2008 and the first three quarters of 2009 which were addressed either to the City of East Orange or to the Water Commission showed one address, 99 South Grove Street, with the zip code of 07018 (except for Block 6100, Lot 7, addressed to the City of East Orange, in which the zip code used was 07019 but the street address was still 99 South Grove Street). East Orange paid such bills using a “purchase order” showing the “vendor” as Livingston, with such purchase order reflecting the Water Commission’s name, and the address as 99 South Grove Street, East Orange, NJ 07018.
Mr. Mansmann testified that the Water Commission functions akin to an independent authority. It is charged with filing property tax appeals without requiring approval of the City of East Orange as the Water Commission can “sue and be sued.” However, its budgets have to be submitted to, and approved by, the Mayor and Council of East Orange. Although East Orange owns *167 the Subject, the Water Commission is solely responsible for the operation and maintenance of the Reserve, sanitary and storm systems. East Orange does not contribute to the payment of property taxes.
Mr. Mansmann further testified that all units within the Water Commission are housed at the administrative office located at 99 South Grove Street, East Orange, NJ 07018.[3] There are no offices with a zip code of 01018, nor does the Water Commission have offices at City Hall. He stated that all mail addressed and received by the Water Commission at 99 South Grove Street, NJ 07018 is logged and date stamped on a daily basis, and he reviews all such mail. These mailings include tax bills sent to the 99 South Grove Street address. He stated that since 2003, the Water Commission never received any Chapter 75 cards, but only tax bills from Livingston at the 99 South Grove Street address.
Mr. Mansmann averred that as was his general practice, he reviewed the third quarter 2009 tax bills which were sent to 99 South Grove Street sometime in June/July of 2009. It was only at this time did he become aware of the Subject’s increased assessments. He immediately contacted the assessor’s office and asked for a meeting in connection with the assessments, which was duly held on or around September 1, 2009 between the assessor, Mr. Mansmann, representative of Appraisal Systems, and Livingston’s Chief Financial Officer.
At the meeting, Mr. Mansmann was told by Appraisal Systems and the assessor that he could not challenge the assessments because he had not filed a timely appeal with the Tax Court. He testified that he did not appeal the assessments immediately after the September meeting because he “took the assumption that there was a mistake in the appraised value because the appraised value went so high.” In addition, “knowing the appeal process, knowing that [the appeal] would be denied” as being untimely, he reached out to the Water Commission’s attorneys, who suggested *168 that he should attempt settlement with Livingston or come to a “real true value for the property.” Mr. Mansmann stated that he had hoped the parties would be able to successfully negotiate a settlement.
When asked by the court as to how the Water Commission determined whether or not to appeal an assessment, Mr. Mansmann testified that after he received tax bills his finance office would provide him a spreadsheet of the properties with the tax amounts against each individual property. He testified that the Commission maintained a listing of the taxes paid on the East Orange properties in order to “do comparisons between years on tax bills, and also to maintain what block and lots and assessments are taken oh each property.” He stated that he would compare the numbers on the spreadsheet to decide whether or not to appeal a local property tax assessment. Mr. Mansmann would provide the spreadsheet to the Commissioners with his recommendation of a tax appeal. The Water Commission (by vote) would make a final determination whether or not such appeal is warranted. If an appeal was approved, then Mr. Mansmann was responsible for its filing and prosecution, and monitoring it to its completion.
After the September 2009 meeting, the assessor corrected Subject’s address to 99 South Grove Street, East Orange, NJ 07018. For tax year 2010, the Chapter 75 cards were sent to the corrected address. East Orange does not dispute receipt of the 2010 notices.

ANALYSIS

In all cases, except revaluation, the deadline to file an appeal either with the County Board of Taxation or the Tax Court is “on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later____” N.J.S.A 54:3-21. However, the appeal deadline is extended to May 1 in a revaluation year. Ibid. Because there is no bar against using bulk mail to send assessment notices pursuant to a revaluation, it is logical to conclude that the appeal deadline in a revaluation year is the later of May 1 *169 or 45 days from the date of the bulk mailing of the notices of assessment.
So taxpayers are “aware of their assessment and changes each year” and have “ample notice ... to preserve their appeal[ ] rights,” N.J.S.A. 54:4-38.1 requires assessors to provide an annual notice of assessment to the taxpayers by mail (including instructions for filing an appeal) before February 1 of each year. Centorino v. Township of Tewksbury, 18 N.J.Tax 303, 310-311 (Tax 1999) (explaining the legislative reasoning for the statute, citing and quoting Assembly Municipal Government Committee, Statement to Assembly Bill No. 4425 (January 30, 1991)). The court noted the 1991 amendment changed the prior law requiring a tax collector to simply send tax bills in June of each year reflecting the assessment because “tax appeals are legally an appeal of a tax assessment and not of a tax bill.” Id. at 310. Thus, the law ensured that taxpayer be “advise[d]” of the assessment “prior to the ... [appeal] filing deadline since tax bills would not reflect the current year’s assessment until the third quarter (August) bill.” Id. at 311.
Where a taxpayer fails to receive such notice, and based on the facts of each case, courts have extended the appeal filing deadlines set forth in N.J.S.A. 54:3-21, not only due to the statutory mandate, but also because lack of notice implicates due process concerns. Centorino, supra, 18 N.J.Tax at 316 (where assessor had actual knowledge of change in ownership but mailed the assessment notice which substantially increased the prior year’s assessment to the prior owner, “principles of due process and equity necessitate^] a relaxation of the filing deadline”). Due process comprises of, among others, “adequate notice.” Id. at 316.
A taxpayer is presumed to have received, and thus, have adequate notice of a bulk mailed Chapter 75 card provided “(1) [the mail] ... was correctly addressed; (2) ... proper postage was affixed; (3) ... the return address was correct; and (4) ... [it] was deposited in a proper mail receptacle or at the post office.” Davis & Assocs., L.L.C. v. Township of Stafford, 18 N.J.Tax 621, 627 (Tax 2000) (citing and quoting SSI Medical Services, Inc. v. *170 State, 146 N.J. 614, 685 A.2d 1 (1996)). The sender of the mail can provide “evidence of habit or routine practice” of its mailing, and corroboration that the practice “was followed in a particular instance” to prove presumption of receipt. Davis, supra, 18 N.J.Tax at 627. The presumption can be overcome by “by evidence that the [mailing] was never in fact received.” SSI Medical, supra, 146 N.J. at 625, 685 A.2d 1.
Based upon the testimonial and documentary evidence, the court finds that Livingston established by a preponderance of evidence that the 2009 assessment notices for the Subject were properly bulk mailed to East Orange on March 11, 2009. Thus, it is presumed that those notices were delivered. However, the court also finds that East Orange provided credible evidence which, by preponderance, establishes that the notices were not delivered either to the Water Commission or to the City of East Orange. Eight assessment notices were sent to a non-existent zip code. The other 32 were sent simply to “City Hall” without a street address and with an incorrect zip code. The fact that none of these notices were returned as undeliverable to Livingston does not mandate a conclusion that they were received by East Orange. See e.g. Centorino, supra, 18 N.J.Tax at 311-312 (“[t]he fact that the improperly addressed card was not returned to the county board is insufficient to establish that it was received by the taxpayer”). Similarly, the fact that the Subject is owned by the City of East Orange, and therefore, one could reasonably assume that the City’s offices would be housed in the City Hall, does not require a conclusion of mail delivery.
Nonetheless, it is undisputed that East Orange had actual notice of the assessments when the tax bills were received in June/July 2009 or at the latest in September 2009 during its meeting with the assessor and Appraisal Systems. Yet it challenged the assessments only in December 2010.
East Orange maintains that its actual notice of the increased assessments or the reason why it did not appeal is irrelevant because Livingston’s failure to establish delivery of its notices renders the statute of limitations inapplicable to East *171 Orange. However, for purposes of the due process implications, actual notice is relevant. See Olde Orchard Village Condo Apartments, Inc. v. Township of Pequannock, 21 N.J.Tax 275, 282 (Tax 2004) (assessment notice sent to one representative rather than “the thirty-eight unit owners” as required by the statute was a “teehnical[ ]” non-compliance where plaintiff received actual notice of the proposed assessment because “[a]ctual notice is sufficient to satisfy constitutional notice requirements”); Family Realty Co. v. Town of Secaucus, 16 N.J.Tax 185, 193 (Tax 1996) (actual receipt of a improperly addressed notice satisfies due process). Cf. I.S. Smick Lumber v. Hubschmidt, 177 N.J.Super. 131, 136, 425 A.2d 709 (Law Div.1980), (“[t]o ignore the fact that a person has been given actual and concrete notice of an event ... flies in the face of common sense____ A bell cannot be unrung, knowledge cannot be erased, and actual notice is-or ought to be-the best notice unless either the English language or the law of common sense be repealed”), aff'd, 182 N.J.Super. 306, 440 A.2d 1160 (App.Div. 1982).
If the actual notice is received beyond the appeal deadlines, then depending on the facts and circumstances, equitable considerations could allow for a limited extension of appeal filing deadlines. Where a taxpayer has actual knowledge of an increased assessment only upon receipt of tax bills indicating increased taxes, those tax bills are deemed to be actual notice of the assessment, and the time to file an appeal can be extended for up to 45 days. Thus, in Centorino, supra, 18 N.J.Tax at 315-16, this court, guided by the time frame set forth in N.J.S.A. 54:4-38.1, extended the appeal deadline by 45 days from the date the taxpayer received her tax bill, which was the first time she had actual notice of an increased assessment. Similarly, in Regent Care Center, Inc. v. City of Hackensack, 18 N.J.Tax 320, 324-25 (Tax 1999), where the taxpayer did not receive the corrected notice of assessment almost doubling the assessment on the original notice, the court found that “fairness require[d]” the taxpayer be afforded 45 days from the date it received the tax bills, i.e., the actual notice, to file a complaint.
*172 There is no question that East Orange had actual notice and thus, knowledge of the increased assessments in June/July 2009 when it received the tax bills, or at the very latest, in September 2009 at the meeting with the assessor and Appraisal Systems. While it was reasonable for Mr. Mansmann to seek an explanation for the basis of the 2009 assessments from the assessor, nothing prevented East Orange from filing a complaint in the Tax Court. Mr. Mansmann’s position that any filing would be deemed untimely since it was past the May 1 deadline, and that he hoped (and was so instructed by the Water Commission) to resolve the taxes between the two governmental entities, is also reasonable. However, the same should be balanced with the Water Commission’s obligation to diligently pursue property tax appeals for the Subject. Mr. Mansmann’s office maintained a list so as to make periodic comparisons of the assessments and taxes on Subject. He was familiar with the appeals process and timelines because he was the person who reviewed and decided whether an appeal was warranted. He was also the person who recommended filing of property tax appeals to the Commissioners. Under these circumstances, and armed with the knowledge in June/July 2009 or even September 2009 that the assessor's office had used incorrect addresses, East Orange’s business decision to pursue negotiations and challenge the assessments only after the tax sale certificate was issued and proposed to be sold in December 2010, does not warrant exercise of equity to extend the appeal deadline by more than one year. See e.g. Regent Care, supra, 18 N.J.Tax at 325 (denying an extension of the appeal deadline even where taxpayer did not receive the Chapter 75 card because taxpayer’s “attempted filing” was 48 days after receipt of “the third and fourth quarters tax bill.”).
Further, the relative “sophistication” of a taxpayer is also a consideration in the application of equitable principles to relax the time limits. See e.g. Davis, supra, 18 N.J.Tax at 634-35 (even assuming the taxpayer did not receive the Chapter 75 notices, as a “sophisticated real estate development company which own[ed] properties and operates commercial enterprises in a number of municipalities” and had received Chapter 75 cards regularly from *173 those municipalities, the taxpayer should have made an inquiry with the assessor as to the “absence of assessment notices” in February or March of the tax year as “[pjrudent business practice”). See also Southway, et al. v. Township of Wyckoff, 20 N.J.Tax 194, 198 (Tax 2002) (same). The court finds that the Water Commission is a sophisticated taxpayer given its powers, duties and responsibilities to, among others, diligently pursue property tax appeals. Therefore, equitable considerations do not merit extension of the limitations period based upon the facts present here.
East Orange maintains that once the court finds that the mail was improperly addressed and therefore undelivered, the court’s inquiry ends. It claims that the burden of rebutting the mailing presumption does not shift to East Orange and any further examination of its actual notice of the assessment is moot. It relies upon Lamantia v. Township of Howell, 12 N.J.Tax 347 (Tax 1992) in this regard.
In Lamantia, the taxpayer timely received the assessment notice. The County Board of Taxation dismissed his petition as untimely. The taxpayer claimed that he had placed a timely petition to the County Board, with two copies for the assessor and the township clerk and a check for the filing fee, in one envelope addressed to the County Board, in his personal mailbox for postal pickup. Id. at 350-51. The check never cleared, and he was eventually informed that there was no record of any such petition in the County Board. Id. at 351. The Tax Court found that “there was no proper posting, no placing in an appropriate receptacle, nor actual delivery to the post office, ... [nor] proof [of] a return address ... on the envelope ... nor that there was adequate postage----” Id. at 352-53. Therefore, the court found that the taxpayer had failed to prove “all of the elements of correct mailing.” Id. at 353. Thus, “there c[ould] be no presumption that [taxpayer’s petition] was received by the county board.” Ibid. Consequently, in the absence of jurisdiction of the County Board, “the matter [could not] thereafter be heard in the Tax Court.” Ibid.
*174 Lamantia is factually inapposite. There, the taxpayer received the assessment notice. Here East Orange is claiming that it never got the assessment notices. East Orange’s analogy of Lamantia appears to be this: if a County Board cannot consider a petition because the taxpayer could not overcome the presumption of mailing, then Livingston cannot oppose East Orange’s challenge to its assessment because Livingston cannot overcome the presumption of mailing. In other words, this court can review East Orange’s challenge to the 2009 assessments. The problem with the analogy is the implicit argument that the limitations period never begins to run. Precedent simply does not support a limitless time to appeal an assessment. Indeed, courts have been careful to limit such time extensions not only by the facts of a particular case, but also whether under those facts equity can be exercised, and then, if equity warrants, the extension is limited to 45 days from the receipt of the tax bills. Centorino, supra, Regent Care, supra.
Additionally, in Southway, supra, the court carefully examined the taxpayer’s burden of proof in connection with the mailing presumption. The court explained that, at all times, the taxpayer has the burden to prove the issue of the “adequacy of notice” in connection with taxpayer’s “excuse [for] late filing and thereby avoid a limitation of the action.” Id. at 200. Thus, a plaintiffs evidence to overcome the mailing presumption creates a “controverted” issue of constructive notice, which “must be addressed in terms of the inferences that flow from the proof of mailing and the testimony concerning receipt.” Ibid. Where evidence can support either delivery or non-delivery of the assessment notice, the “issue must ... be determined against the party who bears the ultimate burden of proof with respect to that issue,” namely, the taxpayer. Id. at 201.
In McMahon v. City of Newark, 195 N.J. 526, 951 A.2d 185 (2008), the Supreme Court categorically held that where a complaint addresses “the quantum or methodology applied in respect of’ the assessments “issued by the City’s tax assessor” then it is “squarely within the band of cases subject to the established tax appeal process” and if not timely appealed “[is] time-barred and *175 the Tax Court ... lack[s] jurisdiction to hear the cause.” Id. at 543-44, 951 A.2d 185. “[Bjoth appealing taxpayers and taxing districts must adhere strictly to the deadlines prescribed by statute. Failure to file a timely appeal is a fatal jurisdictional defect.” F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 425, 495 A.2d 1313 (1985). Based upon the totality of circumstances, the court finds that East Orange is not entitled to a relaxation of the statute of limitations.

WAIVER OF THE STATUTE OF LIMITATIONS

East Orange argues that the time limits to appeal should not apply to it because (a) the 2009 assessments were 2,811% higher than the 2008 assessments, therefore, its complaint raises grave constitutional issues; (b) the assessments are partially void because the Subject is partially tax-exempt as being used for a public purpose. Each argument is addressed in turn below.

1. Constitutional Challenge

East Orange maintains that its complaint is not a traditional local property tax appeal because the assessments are challenged as being unconstitutional. Specifically, and in Count One of its complaint, East Orange claims that the assessments were “equivalent in law of an intentional grossly excessive assessment”[4] and thus “virtually confiscatory;” deprived its property rights without just compensation (presumably indicating an inverse condemnation); and violated its procedural and substantive due process rights. While East Orange did not proffer any briefs on each specific allegation, it argues that if an assessment is discriminatory and thus unconstitutional, there is a “a statutory preclusion in favor of hearing a constitutional claim” (relying upon M.I. Holdings, Inc. v. City of Jersey City, 12 N.J.Tax 129 (Tax 1991)). *176 Thus, East Orange contends, “certain situations (e.g., constitutional claims) warrant relief regardless of procedural requirements set forth in the statute.”
The Uniformity Clause of the New Jersey Constitution, Art. VIII, § 1, ¶ 1(a), provides that “[a]ll property assessed and taxed locally ... shall be assessed according to the same standard of value____” The “best” method to achieve this equality in tax treatment is by performing a district-wide revaluation or by an annual reassessment. Regent Care Center, Inc. v. City of Hackensack, 362 N.J.Super. 403, 415, 828 A.2d 332 (App.Div.2003). Thus, “[p]eriodic revaluations or reassessments are feasible and are necessary to maintain uniform and non-discriminatory assessments.” Ibid, (citation omitted). See also Middlesex Cnty. Bd. of Taxation v. Borough of Sayreville, 133 N.J.Super. 41, 44, 335 A.2d 73 (App.Div.1975) (“[t]he purpose of total revaluation is to achieve tax equality not only as to any given taxing district but also between municipalities of the same county”).
Generally, when a taxpayer complains of discrimination in assessment, the court (after finding the fair market value of the property) applies the rales set forth in N.J.S.A 54:51A-6, which states that the average ratio (commonly referred to as “Chapter 123 ratio”) promulgated by the Director, Division of Taxation (“Director”) is the presumptively correct common level of assessment. However, in a revaluation year, the Chapter 123 ratio does not apply. N.J.S.A. 54:51A-6(d). This is because in a revaluation year it is presumed that all properties are assessed at true value, i.e., at 100% of the fair market value.
Nonetheless, “the Legislature did not intend to deny a taxpayer relief from a discriminatory assessment in a revaluation year.” M.I. Holdings, supra, 12 N.J.Tax at 142. “Indeed, no statute could foreclose a taxpayer’s constitutional right to discrimination relief.” Ibid. Thus, “[i]n egregious cases of discrimination, a taxpayer retains a constitutional right to relief.” Murnick v. City Asbury Park, 95 N.J. 452, 455, 471 A.2d 1196 (1984).[5] “Not every *177 deviation, however, is of constitutional dimension____Substantial, although imperfect, justice satisfies the constitutional mandate.” Id. at 458-59, 471 A.2d 1196. Thus, except in the “rare” cases of such type of discrimination in assessments, and in “all but the most extreme or severe circumstances ... chapter 123 establishes both the right to and measure of relief.” Id. at 455, 463, 471 A.2d 1196.
Nowhere in either Murnick, supra, or M.I. Holdings, supra, is there any finding or ruling, dicta or otherwise, that the statute of limitations cannot apply when a taxpayer raises constitutional claims against an assessment. Nor do the facts indicate that the cases dealt with an untimely filed local property tax appeal. Indeed, the court even required that a taxpayer “bring a timely application to correct the deviation” if it claims that the Director “included incorrect information that substantially skews the ratio.” Murnick, supra, 95 N.J. at 464, 471 A.2d 1196. The Court also went on to state that “the assertion of [such] a claim in a tax appeal is the proper procedure.” Ibid. See also Macleod v. City of Hoboken, 330 N.J.Super. 502, 508, 750 A.2d 152 (App.Div.2000) (“constitutional implications, of themselves [do not] justify waiving or, more candidly, ignoring the” requirement for timely filed property tax appeals, thus “challenges to allegedly discriminatory assessments” are not an exception to the well-established rule that “the courts will not preempt the jurisdiction of county boards [of taxation]”).
There is no merit to East Orange’s argument that if N.J.S.A. 54:51A-6(d) does not preclude a taxpayer’s constitutional right to challenge the Director’s ratio in a revaluation year, then N.J.S.A. 54:3-21 cannot preclude consideration of East Orange’s constitutional challenge to its 2009 and 2010 assessments. Both statutes have entirely different objectives and cannot be analogized to support East Orange’s proposition. Indeed, failure to comply with the time limits of
N.J.S.A. 54:3-21, unless excused and thus extended, prevents consideration of the very limited exception to the application of N.J.S.A. 54:51A-6(d).
Moreover, under East Orange’s analogy, a taxpayer can bypass the statute of limitations by simply claiming that the annual assessment (whether pursuant to a revaluation or otherwise), violates a constitutional right. Since taxpayers routinely allege *178 discrimination in their annual local property tax appeals, under East Orange’s theory, there would be no finality to these assessments. Such a result goes against the very grain of the reason for timely challenges. See F.M.C. Stores, supra, 100 N.J. at 424-25, 495 A.2d 1313 (timely challenge required due to “exigencies of taxation and the administration of local government”); Township of Galloway v. Petkevis, 2 N.J.Tax 85, 92 (Tax 1980) (time limits are strictly construed because of local governments’ need to “ascertain the amount of taxable ratables within [them] jurisdiction in order that [they] might adopt a responsible and fairly accurate budget.”). Cf. New Jersey Transit Corp. v. Borough of Somerville, 13 N.J.Tax 339, 344 (Tax 1993) (rejecting the argument that Transit’s local property tax assessment should be governed by the generic 10-year statute of limitations applicable to the State agencies because “contests of property tax assessments must be promptly filed and concluded, so as not to prejudice the budgetary and fiscal stability of the municipalities that so heavily rely on the property tax” and noting that “[i]f all governmental agencies had ten years ... to contest assessments, the resulting uncertainty would be chaotic”), aff'd, 139 N.J. 582, 661 A.2d 778 (1995).
East Orange speculates that since M.I. Holdings, supra, held that assessments in non-revaluation years could be revised for “legitimate reasons,” 12 N.J.Tax at 144-45, Livingston’s voluntary reduction of the 2010 assessments from $58,604,900 to $35,919,800 shows that Livingston itself considered its 2009 assessments as grossly excessive and thus unconstitutional. The court’s analysis as to discrimination claims in assessment challenges above, applies equally to East Orange’s suppositions here.
Further, in addressing the taxpayer’s argument of an illegal spot assessment in a non-revaluation year, the M.I. Holdings court merely set forth instances where a re-assessment or revision to a prior year’s assessment is a legitimate exercise by the township. See also Regent Care, supra, 362 N.J.Super. at 415-420, 828 A.2d 332 (explaining why re-assessments or revisions of assessments is a sound practice, which balances the preferred, but costly district-wide revaluation and the assessor’s statutory duty to examine properties in the course of annual assessments). *179 There is nothing to conclude from either case that if an assessment is lowered by the township, it per se establishes that the prior year’s assessment was unconstitutional, requiring thence a further leap that the statute of limitations for appealing either year’s assessment is inapplicable. To the contrary, it is well-established that each assessment for each tax year stands on it own, and must be subject to a timely challenge.
In sum, East Orange had every right to seek applicability of the Chapter 123 ratio for tax year 2009 despite it being a revaluation year. However, it also had the obligation to seek a timely review of Livingston’s assessments in this regard. It did not do so. East Orange’s allegations that the sheer quantum of the assessments is so grossly excessive that it amounts to unconstitutional “taking” of the Subject, does not immunize the complaint from the application of the relevant statute of limitations.

2. Exempt Public Purpose

East Orange argues that although portions of the Subject actively used for supply and protection of the public water supply are properly taxable under N.J.S.A. 54:4-3.3, other portions not so used are tax-exempt under the same statute.[6] It maintains that Livingston’s assessments do not differentiate between these two therefore some portion of the assessments is per se void. Although in Count Three of its complaint East Orange sought relief by way of a declaratory judgment in this regard, it also raises this as a ground for a waiver of the statute of limitations in its moving papers in support of its summary judgment motion.
*180 Challenges to an assessment on grounds of tax-exemption are not automatically impervious to appeal deadlines. For instance, in Borough of Somerville, supra, 13 N.J.Tax at 344-46, the Tax Court dismissed Transit’s challenge to the assessments as untimely under N.J.S.A. 54:3-21 despite the fact that Transit claimed it was statutorily tax-exempt under State and federal statutes. Affirming, the New Jersey Supreme Court noted that for purposes of N.J.S.A 54:3-21, “a taxpayer who claims an exemption from an assessment falls within the category of an aggrieved person where the taxpayer is a municipality, a political subdivision of the State.” Borough of Somerville, supra, 139 N.J. at 588, 661 A.2d 778. It then went on to hold that no eases have “construed legislative intent to exempt [government] instrumentalities from the statutory limitations period provided for appealing tax assessments.” Id. at 589, 661 A.2d 778. All taxpayers, including taxing districts “must adhere strictly to the deadlines prescribed by statute.” Ibid.
Similarly, in State v. Borough of Eatontown, 366 N.J.Super. 626, 634, 841 A.2d 990 (App.Div.2004), the court rejected the State’s argument that the statute of limitations under N.J.S.A. 54:4-63.11 was never “triggered” because the assessments were ultra vires. Affirming the Tax Court’s dismissal of the complaints as untimely, the Appellate Division held the revocation of the State’s exempt status was made on “good faith, but legally incorrect assumption,” nonetheless, “the State’s ultra vires position could and should have been raised by a timely appeal ...” Id. at 635, 841 A.2d 990. Quoting the Tax Court’s opinion, that Appellate Division agreed that the State “having failed to do that[,] the municipalit[ies] should ... not be put to the disadvantage of having to have special limitations for special taxpayers.” Ibid. The court also agreed with the Tax Court’s ruling that “a fundamental policy reason under the tax law dictates against acceptance of the State’s ultra vires argument ... [that] the municipalities had the right to rely on the repose of the statute of limitations for purposes of predictability of revenue and sound administration of local government” which is the same “policy consideration” of “the statute of limitations under N.J.S.A 54:3-21, governing appeals from general *181 assessments, since the revenue derived from such assessments is relied on in the budgetary process.” Eatontown, supra, 366 N.J.Super. at 636 and n. 4, 841 A.2d 990.
The same principles apply to a non-government taxpayer. In Royal Bradley Associates v. Borough of Bradley Beach, 252 N.J.Super. 401, 404, 599 A.2d 1288 (App.Div.1991), the court rejected the argument that the statute of limitations applicable to the appeal of added assessments was inapplicable because the assessments were “invalid and void ab initio.” It ruled that subject-matter jurisdiction required strict compliance with statutory appeal procedures. Id. at 403-04, 599 A.2d 1288.
It is true that the Superior Courts have set aside tax sale certificates on grounds that the underlying assessments are void ab initio. See Hudson County Park Comm’n v. Township of Kearny, 132 N.J.L. 287, 40 A.2d 201 (Sup.Ct. 1944) (setting aside a tax sale certificate issued for failure to pay fees assessed for local improvements upon exempt public property used for public purposes although the county’s challenge was beyond the 2-year redemption period); Nordell v. Township of Mantua, 45 N.J.Super. 253, 132 A.2d 39 (Ch.Div.1957) (setting aside the tax sale certificate even after the redemption period expired as it was against property which had no outstanding tax liability).
Here, there is no issue of the timeliness of the tax sale certificate’s redemption periods. Therefore, the above cases are inapposite. To the extent East Orange may rely on those cases to posit that its partial “public purpose exemption”[7] allegation renders *182 Livingston’s assessments void ab initio which in turn renders N.J.S.A. 54:3-21 inapplicable, the court is bound by the Supreme Court and the Appellate Division’s rulings in Somerville Borough, supra, and Eatontoum, supra. Moreover, as held in Eatontown, supra, whether the assessments upon State-owned, thus, tax-exempt property “were ‘utterly beyond the jurisdiction’ of the municipalities or merely an ‘irregular exercise of a basic power,’ ” they come into contention once “the assessments were issued” and the State’s challenge to those as “ultra vires ... could and should have been raised by a timely appeal.” 366 N.J.Super. at 635, 841 A.2d 990. The same is true here given this court’s finding that East Orange’s failure to comply with the statutory deadlines for filing tax appeals is not excusable. This is regardless of the fact that the Tax Court has the expertise to decide tax exemption for purposes of N.J.S.A. 2B:13-2(b).
That East Orange couched its relief in the form of a declaratory judgment does not provide grounds for this court to exercise its subject-matter jurisdiction. Generally, a declaratory action “is proper provided there is a justiciable controversy, the party claiming the relief has standing, and there are no adequate or appropriate alternative remedies.” Registrar & Transfer Co. v. Director, Div. of Taxation, 157 N.J.Super. 532, 538-43, 385 A.2d 268 (Ch.Div.1978), rev’d on other grounds, 166 N.J.Super. 75, 398 A.2d 1335 (App.Div.), certif. denied, 81 N.J. 63, 404 A.2d 1161 (1979).
Here, the court found that East Orange’s failure to timely file a 2009 appeal is not equitably excusable. East Orange does not even allege lack of notice for tax year 2010. Clearly, it had more than an adequate remedy to challenge Livingston’s assessments by applying to either the County Board of Taxation or this court. Thus, although an action for declaratory relief generally does not have a prescribed statute of limitations, see Ballantyne House Assocs. v. Newark City, 269 N.J.Super. 322, 330, 635 A.2d *183 551 (App.Div.1993) (“the Declaratory Judgment Act, N.J.S.A. 2A: 16-50 to -62, does not contain a statute of limitations, and a declaratory judgment action challenging the constitutionality of a legislative enactment is not ordinarily subject to a defense of laches”), under the facts here, East Orange cannot use the declaratory relief to bypass the statute of limitations. As pointed out by the Appellate Division:
The issue as to the validity of the municipalities’ actions under N.J.S.A. 54:4-3.3 was joined once they assessed the parcels as nonexempt properties, and gave the State proper notice of the assessment. At this point, the State had an adequate remedy by appealing in a timely manner the actions the municipalities had taken. The State could not circumvent that appellate procedure by seeking declaratory judgment relief. Indeed, the jurisdictional imperative of filing timely tax appeals would be rendered a nullity if an aggrieved party is permitted to challenge the validity of an assessment in a declaratory judgment action instead of adhering to the time constraints of the tax laws.
[Borough of Eatontown, supra, 366 N.J.Super. at 637, 841 A.2d 990]
Importantly, in the declaratory relief cases implicating tax issues, the taxpayers challenged pre-final assessment actions of the Director. For instance, in Rutgers Univ. Legislative Affairs Council, Inc. v. Thompson, 12 N.J.Tax 642, 647 n. 2 (Tax 1992), the Tax Court found declaratory judgment appropriate to review the validity of the Director’s position letter as to whether on-campus students are eligible for homestead rebate. In Labor Ready Northeast, Inc. v. Director, Div. of Taxation, 25 N.J.Tax 607 (Tax 2011), this court ruled that the Director’s letter advising the taxpayer as to its future sales tax obligations was appropriate for review as a declaratory action. Similarly, in Registrar & Transfer, supra, the Superior Court found declaratory action appropriate to review the Director’s letter advising the taxpayer of his intent to assess future sales tax for the storage of certain stock certificates or other documents. 157 N.J.Super. at 537, 385 A.2d 268. In complete contrast, East Orange is seeking declaratory relief on already-fixed local property assessments. This is impermissible.
In sum, the court finds that East Orange’s complaint is not impervious to the applicable statute of limitations (N.J.S.A 54:3-21) due to its challenges to the constitutionality of the quantum and methodology of Livingston’s assessments, or its claims of *184 statutory tax-exemption on grounds of public purpose use even if couched as an action for declaratory judgment.

GREENACRES ACT

The only issue remaining is East Orange’s claim in Count Two of its complaint and in its summary judgment motion, that Livingston’s issuance of the tax sale certificate violates the Green Acres Act which the court can decide regardless of the appeal periods for local property tax assessments.
The Superior Court is the statutorily mandated court to adjudicate challenges to a tax sale certificate. See N.J.S.A. 54:5-86; 5-87; 5-100; 5-105. See also DSC of Newark Enterprises v. Borough of South Plainfield, 17 N.J.Tax 510, 513-514 (Tax 1997) (“[i]n each instance in which the Tax Sale Law mentions the jurisdiction of the courts, the Superior Court is named as the court to which a property owner must resort”), aff'd, 17 N.J.Tax 507 (App.Div.1998).
Here, the Chancery Division transferred the matter to the Tax Court but not foreclosing the parties from returning to it should the Tax Court decide not to “determine the Green Acres issue” because the Chancery Division’s dismissal was “not a dismissal on the merits.” Nonetheless, it “antieipat[ed]” that the Tax Court would determine all issues “so it goes up from there to the Appellate Division.” In its latest order of July 20, 2012, the Chancery Division stated that it had transferred the matter the Tax Court “in its entirety without any restrictions or direction from the Chancery Division.”
Given that East Orange timely raised the Green Acres issue in the Superior Court, this court will decide its merits. Parties will be afforded an opportunity to present their positions either by way of summary judgment or a plenary hearing.

STAY AND INJUNCTION

The court will continue the stay and injunction granted by the Chancery Division until completion of the resolution of the issue involving the Green Acres Act since this implicates the validity of the issuance of the tax sale certificate. It should be noted that *185 Livingston’s tax sale certificate is against only one of the 40 lots comprising the Subject in Livingston.

CONCLUSION

For the aforementioned reasons, the court finds that it lacks subject-matter jurisdiction to decide Counts One and Three of East Orange’s complaint, specifically, whether Livingston’s assessments for tax years 2009 and 2010 are valid. Therefore, those counts are dismissed with prejudice, and Livingston’s summary judgment motion in this regard is granted.
The court also finds that it can decide whether Livingston’s issuance of the tax sale certificate on Lot 6100 Block 18 violates or conflicts with the Green Acres Act. Therefore, Count Two of East Orange’s complaint will be severed and decided. East Orange’s summary judgment motion in this regard is granted. Due to the pendency of this issue, the stay and injunction against the tax sale proceedings will continue to be in effect.

 The detailed procedural history is set forth in the court’s two prior written unpublished opinions dated April 20, 2012, and July 30, 2012.

 East Orange-withdrew its previously filed complaint in the United States District Court, District of New Jersey.

 Only the Water Commission’s treatment facility is at another address in Millburn.

 The 2008 assessment was $2,013,500. This increased in to $58,604,900 for tax year 2009. Livingston reduced the 2010 assessment to $35,919,800. However, the average ratio for tax year 2008 was 12.17%. Thus the properties were being assessed at about 12% of their true value, whereas the 2009 district-wide revaluation would render the properties be assessed at 100% of their true value. Therefore, simply comparing the amount of the 2008 and 2009 assessments would not per se establish gross excessiveness.

 There was no indication that Mumick, supra, involved a revaluation year.

 N.J.S.A. 54:4-3.3 states that "lands of ... municipalities, and other municipal and public agencies of this State used for the purpose and for the protection of a public water supply shall be subject to taxation by the respective taxing districts where situated, at the taxable value thereof ... in the same manner and to the same extent as the lands of private persons, but all other property so used shall be exempt from taxation." See also N.J.S.A. 40:62-133.13 ("waterworks and all other property of a commission are ... public property of a political subdivision ... and devoted to an essential public and governmental function and purpose and, other than lands subject to assessment and taxation pursuant to [N.J.S.A.] 54:4-3.3, shall be exempt from all taxes . . of ... any subdivision”).

 As far back as 1963, the entire Subject has been assessed by Livingston. See Appeal of East Orange, 80 N.J.Super. 219, 221-222, 193 A.2d 377 (App.Div.) (describing the Subject as totaling about 1,471 acres of land "made up of 40 parcels, each listed separately by lot and block number and separately assessed”, which "along with other acreage in adjacent municipalities” supplies "potable water to its inhabitants,” and that Livingston assessed "this water reserve land" pursuant to N.J.S.A. 54:4-3.3 "for 1957 at a total of $ 1,734,900”), certif. denied, 41 N.J. 200, 195 A.2d 468 (1963). There was no claim of any tax exemption for any portion of the Subject. It does not appear that the Subject has drastically changed in total acreage since in its moving papers East Orange states that it owns about 1,465 acres in Livingston, and that Livingston imposed separate assessments on 40 parcels. In light of these unchanged facts, East Orange's *182 claim for “public purpose" exemption under N.J.S.A. 54:4-3.3, which statute has existed since 1910, is being proffered here for the first time.